## BOYKIN *v.* ANCRUM.

1. A devise to "A for and during the term of his natural life, and from and after his decease to his lawful issue absolutely and in fee simple. But if A should die leaving no lawful issue at the time of his decease, then to B," &c. *Held*, that A took only a life estate with a limitation over to his issue in fee as purchasers.

2. Devise to J for life, remainder to A for life, remainder to A's issue in fee. A purchased the life estate of J, and died leaving J surviving. *Held*, that J's life estate was merged by this purchase into A's life estate, and at the death of A, his issue were entitled to the possession of the property.

3. Being so entitled to possession, and having failed for twenty years thereafter to assert their claim, their rights were barred as against parties in adverse possession of this land.

4. A release by some of A's issue of all their rights in the premises to the parties in possession did not affect the character of the holding of these parties as against those not releasing.

5. Where the value of improvements is allowed to *bona fide* purchasers in possession as against the true owners of the land, the purchasers should not also be allowed interest thereon from the filing of the decree.

Before NORTON, J., Kershaw, February, 1887.

. This was an action by Elizabeth B. Boykin and others against W. A. Ancrum, as trustee, and others, commenced after the death of Mrs. Glass (in 1885), and prior to August 23, 1886, the date of the first reference in the case. The Circuit decree was as follows:

: The rule in Shelley's case is invoked by the defendants: on which rule Sir Wm. Blackstone remarked in *Perin* v. *Blake* (1 *W. Bl.*, 672), "The true question of intent will turn, not upon the quantity of estate intended to be given to the ancestor, but upon the nature of the estate intended to be given to the heirs of the body. That the ancestor was intended to take an estate for life is certain; that his heirs were intended to take after him is equally certain; but how those heirs were intended to take, whether as descendants or as purchasers, is the question. If the testator intended they should take as purchasers, then the ancestor only remained tenant for life; if he meant they should take by descent, or had formed no intention about the matter, then by consequence and operation of law the inheritance first vested in the ancestor." Such I understand to be the doctrine of our own cases. They are collected in *Fields* v. *Watson*, 23 *S. C.*, 42, and in *McIntyre* v. *McIntyre*, 16 *S. C.*, 291.

· So far I understand counsel agree, but their contention is as to the effect of the words, "and after his decease to his lawful issue absolutely and in fee simple." Previous to our act of 1824, the general rule was: "That the devise of real estate, merely describing the property, without defining the interest which the devisee should take, would only give an estate for life." But this rule yielded to the intention of the testator, and any form of expression in a devise which showed an intention to give the whole title was held sufficient for that purpose, as a devise in fee simple. The following expressions have been adjudged to indicate an intention to give a fee simple title in remainder to the heir as purchaser and to confine the estate of the first taker to an estate for life, to wit: a devise to testator's daughter "during the term of her natural life and then to descend to her issue, and if she should die without any living issue, to return back to testator's living heirs." *Williams* v. *Caston*, 1 *Strob.*, 132. After the bequest for life, the limitation was to the issue to be their "absolute

property forever." *Myers* v. *Anderson*, 1 *Strob. Eq.*, 344. The limitation was to the lineal descendants of the life tenant "absolutely and forever." *M'Lure* v. *Young*, 3 *Rich. Eq.*, 571.

None of these superadded words are nearly so strong as the words "absolutely and in fee simple," in the devise under consideration. It is therefore adjudged, that the five named children of William A. Ancrum, all of whom survived him, took as purchasers a fee simple in remainder in the premises described in the complaint, and that he took only a life estate therein. The devise over in case of William A. Ancrum's death without issue, to testator's third son, Thomas J. Ancrum, furnishes an additional reason for so adjudging. *Henry* v. *Archer*, *Bail. Eq.*, 535.

"A merger takes place where there is a union of a freehold or fee and the term in one person, in the same right, and at the same time. In this case, the greater estate merges and drowns the less, and the term becomes extinct. * * * The estate in which the merger takes place is not enlarged by the accession of the preceding estate, and the greater only subsisting estate continues after the merger precisely of the same quantity and extent of ownership as it was before the accession of the estate, which is merged and the lesser estate is extinguished. As a general rule, equal estates will not drown in each other. The merger is produced either from the meeting of an estate of higher degree with an estate of inferior degree, or from the meeting of the particular estate, and the immediate reversion in the same person. An estate for years may merge in an estate in fee, or for life, and an estate *pour autre vie* may merge in an estate for one's own life." 4 *Kent;* also, 1 *Wash. Real. Prop.*, 117.

When William A. Ancrum purchased the life estate of Mrs. Julia Glass in the premises, that estate merged in his life estate. His death terminated his life estate (the only life estate which subsisted after the merger by purchase just stated), and thereupon the statute of limitations and the presumptions of conveyances from Mrs. Elizabeth B. Boykin and Mrs. Margaret Boykin, *née* Ancrum, was set in motion. See *Mangum* v. *Piester* (16 *S. C.*, 316), which though it was not decided on the question as to when the statute began to run, yet that question was decided under the requirements of sec. 8, art. IV., of the State Constitution that

"when a judgment or decree is reversed or affirmed by the Supreme Court, every point made and distinctly stated in writing in the cause, and fairly arising upon record of the case, shall be considered and decided," and is authority and not a mere dictum on that question.

The statute of limitations cannot avail defendants because no one person ever held for ten years adversely to plaintiffs. The presumption of a conveyance from Mrs. Margaret Boykin cannot arise, for she attained her majority less than twenty years ago, viz., March 6, 1869; Mrs. Elizabeth B. Boykin attained her majority April 25, 1864, and does not appear to have labored under any other disability. The stay law was not applicable to cases of this nature, and did not prevent the setting in motion of the presumption of a conveyance from her. The cases of *Massey* v. *Adams*, 3 *S. C.*, 265; *Gray* v. *Givens*, 2 *Hill Ch.*, 513; *Riddlehoover* v. *Kinard*, 1 *Hill Ch.*, 378, and *Henry* v. *Stewart*, 2 *Hill*, 328, cover fully the position that the minority of Mrs. Margaret Boykin, and of some of her heirs since her death, does not prevent the presumption that Mrs. Elizabeth B. Boykin conveyed her interest in the premises to the alienee of William A. Ancrum.

The master has found betterments in favor of Fannie C. Johnson to the extent of fourteen hundred and fifty dollars and in favor of William A. Ancrum, trustee, to the extent of two thousand dollars. To these findings there are no exceptions, and they are confirmed. The master has also found that the defendants should pay rents from the death of Mrs. Glass, in March, 1885, and has given the rental value of the premises before and since the betterments. Defendants except to this finding because the complaint for rent was not set up in the complaint, and the exception seems to be well taken; but in the furtherance of justice and that the whole matter may be finally settled, I hereby give leave to the plaintiffs, at any time within twenty days after the filing of this decree, to amend their complaint by inserting apt allegations and demand for judgment for rents. If such amendment be so made, then I adjudge on the testimony taken without objection in the action, that the defendants, Margaret D. Ancrum and Fannie A. Johnson, are not liable to pay any rents, on the

well established principle that one tenant in common is not liable to pay rent on improvements made by himself and the property of which said persons are the occupants has no rental value except as they have respectively made improvements thereon. The defendant, William A. Ancrum, trustee, is chargeable with rents from March, 1885, at ten dollars per month. No rental value has been proven as to the property occupied by H. U. Parker.

It is therefore ordered, decreed, and adjudged:

1. That the complaint be dismissed as to the plaintiff, Elizabeth B. Boykin.

2. That the other plaintiffs recover as follows, to wit, Samuel F. Boykin, sr., the one-fifteenth, and Douglas A. Boykin, Samuel F. Boykin, jr., Mattie R. Boykin, and William A. Boykin each the one-thirtieth of each of the lots of land described in the complaint.

3. It being manifest that said lots cannot be divided in kind in this action, it is ordered that the master for Kershaw County do sell said lots, &c.

4. That out of the proceeds of such sales the master do pay the costs of the plaintiffs and the defendants in this action. each parcel to bear its proportionate part thereof, which will be ascertained by such sales.

5. That out of the proceeds of the sale of the parcel held by Fannie A. Johnson, next to costs, that the master pay her fourteen hundred and fifty dollars, with interest from the filing of this decree for betterments.

6. That out of the proceeds of the sale of the parcel held by William A. Ancrum, trustee, including the house occupied by Margaret D. Ancrum, the master do pay to William A. Ancrum the sum of seventeen hundred and sixty dollars (being the value of the betterments made by him, less the rents due by him), with interest thereon from the filing of this decree.

7. That the balance of the proceeds of said sales be paid out as follows, viz.: of the parcel held by Fannie A. Johnson, four-fifths to her; one-fifteenth to Samuel F. Boykin, sr., one-thirtieth to the guardians of each of the estates of minors Douglas A. Boykin, Samuel F. Boykin, jr., Mattie R. Boykin, and William A. Ancrum. If no such guardians be now or hereafter appointed,

then such payment to be made to each of the said minors as they shall respectively arrive at age.

The master's able report has given me great assistance in arriving at my conclusions, both of law and fact.

*Mr. W. M. Shannon*, for appellants.

The plaintiffs take as purchasers. 16 *S. C.*, 290; 1 *Strob.*, 132; 1 *Strob. Eq.*, 344; 3 *Rich. Eq.*, 571; 23 *S. C.*, 42; 16 *S. C.*, 220. There was no merger. 1 *Wash. Real Prop.*, 553; 18 *Ves.*, 384. There was no presumption of a grant, because no adverse holding. 4 *Rich.*, 50; 4 *Strob.*, 240; *Freem. Cot.*, § 243. It was error to allow interest on improvements of which defendants are in possession.

*Mr. J. T. Hay*, for defendants.

W. A. Ancrum took an estate in fee conditional. 1 *Rich. Eq.*, 404; 16 *S. C.*, 294; 3 *Hill*, 193; *Bail. Eq.*, 301, 535; 4 *Rich. Eq.*, 426; 4 *S. C.*, 16; 2 *Wash. Real Prop.*, 602, 604; 21 *S. C.*, 43, 313; 24 *Id.*, 314. Having conveyed the land after birth of issue, the purchasers took good title. 13 *S. C.*, 119. There was a merger of the two life estates into that of W. A. Ancrum. 1 *Hill Ch.*, 270; 1 *Wash. Real Prop.*, 115, 107, 118. Title will be presumed. 1 *Hill Ch.*, 378; 8 *Rich.*, 401; 16 *S. C.*, 316. Minority does not protect cotenants against presumptions. 3 *S. C.*, 265; 2 *Hill Ch.*, 514; *Ang. Lim.*, § 484. Release by some of the owners has no effect as to the others. 1 *Green Evid.*, § 176; *Ibid.* (13th edit.), § 23, note, p. 249, note 4, § 211.

April 17, 1888. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. In the year 1831, William Ancrum died leaving a will, by the fifth clause of which he devised as follows: "And as to my real estate I give and bequeath and devise unto my dearly beloved wife, Julia, my dwelling house, situate in the town of Camden, with the appurtenant lands and hereditaments thereunto belonging, * * * for and during the term of her natural life. From and after the decease of my said dearly beloved wife, I give and bequeath and devise my said

dwelling house * * * to my eldest son, Fowler Brisbane Ancrum, for and during the term of his natural life; and from and after his decease to his lawful issue absolutely and in fee simple. If my eldest son, Fowler Brisbane Ancrum, should die leaving no lawful issue at the time of his decease, then and in such case, I give, bequeath, and devise my dwelling, * * * to my second son, William Alexander Ancrum, for and during the term of his natural life; and from and after his decease to his lawful issue absolutely and in fee simple. But if my said second son, William Alexander Ancrum, should die leaving no lawful issue at the time of his decease, then and in such case I give, bequeath, and devise my said dwelling, &c., to my third son, Thomas James Ancrum, for and during the term of his natural life, and from and after his decease to his lawful issue forever and in fee simple," &c.

The eldest son, Fowler Brisbane Ancrum, died early without lawful issue at the time of his death. The second son, William Alexander Ancrum, purchased the life estate of his mother, Julia, (afterwards Mrs. Glass) in 1837 (the deed, however, was not proved); and thus being, as he doubtless supposed, the owner of the fee, on March 25, 1857, he conveyed the premises described, with the usual warranty, to one Joseph W. Doby, who, in 1863, conveyed them to James R. Read; and he (1873) to Martha C. Jennings, and she (1876) to E. D. Durham, and he (1876) to Thomas James Ancrum, and he (1881) conveyed the same to William A. Ancrum, trustee, with the exception of ½ acre, which was conveyed (1884) to Fannie C. Johnson, and William A. Ancrum, trustee, (1885) conveyed one acre of said premises to H. U. Parker. Fannie C. Johnson, being advised that she had good legal title, made improvements on the premises conveyed to her, which enhanced their value $1,450; and William A. Ancrum, trustee, supposing that his title was good, made improvements on the premises conveyed to him which enhanced their value $2,000.

William Alexander Ancrum died in the month of July, 1862, leaving at the time of his death as his lawful issue, his son, Thomas J. Ancrum, and four daughters, viz.: Mary, who intermarried with C. J. Shannon, Elizabeth B., who intermarried with Samuel

Boykin, Ellen, who intermarried with Francis D. Lee, and Margaret, who intermarried with Samuel F. Boykin.   Elizabeth was born April 25, 1843, and Margaret was born on May 6, 1848, and died April 28, 1884, leaving as her heirs at law, her husband, Samuel F. Boykin, and four minor children, viz.: Douglass A., Samuel F., Mattie R., and William A. Boykin.

In 1872, while James R. Read held the premises, Thomas J. Ancrum, Mary A. Shannon, and Ellen D. Lee, three of the children of William Alexander Ancrum, by their deed under seal, released and relinquished all right or claim in said premises sold by their father.   Julia Glass, the widow of the testator, died in 1885, and Elizabeth B. Boykin and the husband and children of her deceased sister, Margaret Boykin, (being the two children of William A. Ancrum, who did not release their interest in the premises) instituted this action, some time in the latter part of the year 1885 (the exact date does not appear), against the several parties in possession, to recover their respective shares of the aforesaid premises, as purchasers under the will of William Ancrum, and to partition the same among themselves.   The defendants claim that, the first son, Fowler Brisbane Ancrum, being out of the question, the devise gave a vested fee conditional to William A. Ancrum, and having aliened the premises after issue born, his alienees are seized in fee.   And, failing in this construction, that they had acquired title by the statute of limitations and presumption of a grant from lapse of time, &c.

The issues of fact and of law were referred to the master, J. D. Dunlap, Esq., who made a very full and clear statement of the facts, as herein summarized, and held that William A. Ancrum took under his father's will only a life estate in remainder after the life estate of his mother, Julia, and that his children and grandchildren (whose parent was dead) took by purchase as remaindermen, and not as heirs by limitation ; and that Elizabeth B. Boykin and the heirs of her deceased sister, Margaret Boykin, are entitled to recover their shares of the premises in question : the said Elizabeth B. one-fifth part thereof, and the other plaintiffs (heirs of Margaret) another one fifth part, and all proper rents, and allowing credits for improvements accordingly, &c.

This report was heard upon exceptions by his honor, Judge

Norton, who confirmed the report, as to the construction of the will of William Ancrum. But he held that upon the purchase of his mother, Julia's, life estate by William Alexander Ancrum, that estate was merged in his own life estate, and as that ended with his death in July, 1862, a right of action then accrued to the remaindermen, who were under no disability to sue; and that the lapse of twenty years from that time until the action was brought, raised the presumption of a grant from Mrs. Elizabeth B. Boykin, and as to her, he dismissed the complaint; but he decreed that Samuel F. Boykin, the husband of Margaret who had died, was entitled to one-fifteenth, and each of her four minor children to one-thirtieth of the premises claimed.

From this decree both the plaintiffs and defendants appeal to this court, the defendants upon the single ground that "his honor erred in adjudging that under the will of William Ancrum the children of William A. Ancrum took as purchasers an estate in fee simple in remainder in the premises described, and that William A. Ancrum took only a life estate therein."

THE PLAINTIFFS' EXCEPTIONS.—"1. Because his honor erred in holding that when W. A. Ancrum purchased the life estate of Mrs. Julia Glass in the premises described in the complaint, her life estate merged in the life estate of the said W. A. Ancrum.

"2. Because his honor erred in holding that the presumption of a grant was set in motion against the plaintiffs at the time of the death of W. A. Ancrum.

"3. Because his honor erred in holding that the occupancy of the premises since the death of W. A. Ancrum has created a complete presumption that Mrs. Elizabeth B. Boykin had conveyed her interest in the premises to the alienee of W. A. Ancrum.

"4. Because his honor erred in not holding that the presumption arising from an adverse holding ceased to operate from the time of J. R. Read's purchasing the interests of certain cotenants of the plaintiffs on the     day of     , 1872, and from that time became permissive and amicable.

"5. Because his honor erred in holding that the defendants are entitled to interest on the amount allowed them for improvements

from the day of filing of said decree, when the evidence shows that they are in possession of said premises and receiving the benefits of the same."

As to the construction of the devise. "To my second son, William Alexander Ancrum, for and during the term of his natural life, and from and after his decease to his lawful issue, absolutely and in fee simple. But if my said second son, William Alexander Ancrum, should die, leaving no lawful issue at the time of his decease, then, and in such case," over, &c. Without going again into the authorities upon the subject, we think this case is concluded by that of *McIntyre* v. *McIntyre* (16 *S. C.*, 294), where the authorities are cited and the conclusion satisfactorily stated by Mr. Justice McIver as follows : "We think the authorities in this State conclusively show that where the word 'issue' is so qualified by additional words as to evince an intention that it is not to be taken as descriptive of an indefinite line of descent, but is used to indicate a new stock of inheritance, the rule [in Shelley's case] does not apply." In that case, as in this, the antecedent estate was expressly "for life," and after the decease of the tenant for life, to the "issue." The super-added words there were, "and their heirs forever," while here they are "absolutely and in fee simple"—an equivalent phrase certainly quite as strong as the other. Besides, here there is still another limitation over to the third son, Thomas James Ancrum; "but if my said second son, William A. Ancrum, should die, leaving no lawful issue at the time of his decease," &c. We agree with the master and Circuit Judge that William Alexander Ancrum took only a life estate in the premises described, and that there was a limitation over to his issue as purchasers.

Then, as to the plaintiffs' exceptions. The first charges that it was error in the judge to hold, "that when W. A. Ancrum purchased the life estate of Mrs. Julia Glass in the premises described, her life estate merged in the life estate of W. A. Ancrum." It was certainly just, when Chancellor Kent adopted the language of a great master in the doctrine of merger, "that the learning under this head is involved in much intricacy and confusion." "Merger is described as the annihilation of one estate in another. It takes place usually when a greater estate

and a less coincide and meet in one and the same person, without any intermediate estate, whereby the less is immediately merged—that is, sunk or drowned in the greater." *Garland* v. *Paplin.* 32 *Grat.*, 305; 2 *Bl. Com.*, 177; 4 *Kent*, 100. Taking this definition, do the conditions exist here for a merger? Mrs. Glass had an estate for life, and (passing over the eldest son, who had died early) the next vested estate was that of William Alexander Ancrum, which was also for life, without any estate intervening. These respective estates were to be enjoyed successively, and not concurrently—that of the mother, Julia, coming first in the order of succession. But in 1837 W. A. Ancrum purchased the life estate of Julia and held both, claiming the premises as his own absolutely until he sold and conveyed them to Doby in 1857. Did not this make the case referred to in the books "of the incompatibility of a person filling at the same time the characters of tenant and reversioner in one and the same estate"?

It is said, however, that both estates were for life, and therefore equal in degree, and merger only takes place when a larger and smaller estate meet in the same person. The general rule is, that equal estates will not drown in each other, but there are well established exceptions. Were these estates equal in the sense of the rule? Looking at them from the point of view of W. A. Ancrum, one was an estate for the life of Mrs. Julia Glass, preceding his estate, and the other succeeding was for his own life. There seems to be something in the order in which the estates stand to each other in the matter of time. Chancellor Kent states the rule thus: "The merger is produced, either from the meeting of an estate of higher degree with an estate of inferior degree, or from the meeting of the particular estate and the immediate reversion in the same person. An estate for years may merge in an estate in fee or for life; and an estate *pour autre vie* may merge in an estate for one's own life; and an estate for years may merge in another estate or term for years, in remainder or reversion. * * * To effect the operation of merger, the more remote estate must be the next vested estate in remainder or reversion, without any intervening estate, either vested or con-

tingent; and the estate in reversion or remainder must be at least as large as the preceding estate."

It seems that even when the estates are theoretically equal, the first in the order of succession may merge in the next vested remainder, being in this respect somewhat like a surrender, which is the relinquishment of a particular estate in favor of the tenant of the next vested estate in remainder or reversion. In the notes to the case of *James v. Morey*, 2 *Cowen*, 246 (14 A. D., 475), "Leading Cases in the American Law of Real Property," lately published (1887) by Sharswood & Budd, vol. 3, 231, the rule is thus stated: "The estate in reversion or remainder must be *as large as, or larger than*, the estate to be merged. 3 *Prest. Conv.*, 51. The expression, 'as large, or larger,' must be, of course, taken in the technical sense; thus an estate for life is larger than an estate for years, although death may destroy the former estate long before the efflux of time has brought the latter to a conclusion. Thus, if a lease be made for years, with a remainder to the lessee for life, the estate for years will merge; but if there be an estate for life, with remainder to the life tenant for years, there will be no merger. *Co. Litt.*, 54, b. In *Shehan v. Hamilton*, 4 *Abb. App.*, 211, it is said that estates of equal degree do not merge; but whether this be strictly so or not, the effect of a merger will be produced by the unity of possession. An estate at will will merge in an estate for years. 3 *Pres. Conv.*, 176. Estates for years may merge in each other or in estates for life. Estates for life will merge. *Co. Litt.*, 338, b; *Cary v. Warner*, 63 *Me.*, 571; *Allen v. Anderson*, 44 *Ind.*, 395." We cannot say that the Circuit Judge committed error in holding that when W. A. Ancrum purchased the life estate of Mrs. Glass in the premises that estate merged in his estate.

Exceptions 2, 3, and 4 make the point, substantially, that the judge erred in holding that at the death of William A. Ancrum (1862) the rights of the issue in remainder attached, and from that time the possession of the parties was adverse, so as to put in motion the presumption of a grant from Mrs. Elizabeth B. Boykin, who reached her majority in 1864, two years after the death of her father, W. A. Ancrum, and more than twenty years before the commencement of the action. The life estate of Mrs.

32

Glass was the first in the order of succession, and doubtless was expected to be the first to fall in ; the fact, however, was otherwise, for she survived W. A. Ancrum for more than twenty years. It is true that, but for his purchase of her estate, W. A. Ancrum would never have reached the possession of his estate ; and it is asked whether, under these circumstances, his right must be limited to his own life estate, which, though vested, he never enjoyed in possession, so as to make his death, and not hers, the time at which an action accrued to the remaindermen. At first view it is not obvious how an estate, which turned out to be the longest, could be drowned in one of shorter duration ; but, according to the authorities, it seems that such was the necessary consequence of the merger. See *Mangum* v. *Piester*, 16 *S. C.*, 330 ; 4 *Kent*, 99 ; 2 *Pom. Eq. Jur.*, section 787, and notes, where it is said that : "An estate for years will merge in a reversionary term of years, even though the latter is of less duration," citing, among other authorities, *Welsh* v. *Phillips*, 54 *Ala.*, 309. And Chancellor Kent says : "The estate in which the merger takes place is not enlarged by the accession of the preceding estate, and the greater or only subsisting estate continues after the merger precisely of the same quantity and extent of ownership as it was before the accession of the estate which is merged, and the lesser estate is extinguished," &c.

We cannot doubt that the premises were held adversely to all the world. During his life William A. Ancrum held them as his own absolutely. Shortly before his death (in 1857) he conveyed them to Joseph W. Doby, with the usual warranty of title. We do not see how the relinquishment of some of the remaindermen could affect the character of the possession as to those who did not relinquish. We do not, however, think that the defendants should have interest on the value of their improvements while they have the possession and use of the same.

The judgment of this court is, that the judgment of the Circuit Court, with the slight modification as to interest on the value of the improvements, be affirmed.