WILLIAM H. PLATNER, APPELLANT, V. W. J. MCMARTIN
ET AL., APPELLEES.

299 N. W. 182

FILED JUNE 27, 1941. No. 31118.

Ziegler, Dunn & Becker and D. L. Manoli, for appellant.

Baird & Baird and Fred N. Hellner, contra.

Heard before PAINE, CARTER and MESSMORE, JJ., and SPEAR and FALLOON, District Judges.

SPEAR, District Judge.

William H. Platner, appellant, for some years owned and occupied a fine home west of the city limits of Omaha. The house had no sewer connections. In 1925 Mr. Platner asked and received permission from Douglas county to construct a sewer under a county road, which would be Farnam street extended, for a distance of three blocks where connection could be made with a city sewer. He constructed the sewer at a cost of about $2,700 connecting same with his house and with the city sewer, using ten-inch tile. In front of each lot in the three blocks he made provision to attach a lateral, should a lot owner desire to connect with his sewer. In 1928 he conveyed the premises to Fred J. Ruedy and wife, Bertha, appellee, who is the present owner, for $32,000 and another house. The deed conveyed the real estate, together with "all * * * appurtenances to the same belonging." At that time Mr. Platner owned no other property along the line of the sewer or in the vicinity, although before the deal was finally consummated he bought another lot across the

street north of Ruedy. At the time Platner sold to Ruedy there were no other houses connected with the sewer, and, as far as the record indicates, no other houses had been built on any of the lots along the line of the sewer. In 1929 Mr. Platner constructed a house on the lot north of Ruedy and connected with the sewer. Mr. Ruedy contends that he knew nothing about Platner connecting with the sewer. In any case, no disagreement was had concerning the sewer until the year 1938, when Dr. W. J. McMartin, also appellee, who owns a house south of Ruedy, obtained permission from Ruedy to connect with the sewer through his (Ruedy's) lateral in Ruedy's yard, paying Ruedy $125 therefor. At that time Mr. Platner became engaged in a controversy with Dr. McMartin over McMartin's right to hook onto the sewer. The dispute culminated in this action. Throughout this opinion the name Ruedy and Mrs. Ruedy are used interchangeably for the sake of brevity.

Platner claims that the sewer belongs to him and sues McMartin and Ruedy for $325 for the alleged unauthorized use of his sewer by McMartin, claiming that Ruedy is liable with McMartin because Ruedy permitted McMartin to connect with his lateral and thereby emptied McMartin's sewage into the main sewer in the street. Ruedy counterclaims asking judgment against Platner for connecting with the street sewer which Ruedy contends was transferred to him by the deed. McMartin answers alleging, first, that the sewer is in a public road and that therefore plaintiff can claim no ownership of the sewer, and, second, that plaintiff conveyed all his rights in the sewer to Ruedy by the deed. A jury was waived and trial had to the court. The district court found for Ruedy and McMartin and awarded Ruedy a judgment against Platner in the sum of $296. Mr. Platner appeals.

Plaintiff's counsel asked plaintiff to detail any conversations had with Ruedy about the sewer before the deed was given. The defendant Ruedy objected to this, and the court stated that he thought it was inadmissible, but upon the insistence of plaintiff's counsel that this was a proper

method of proving the meaning of the word "appurtenances" in the deed, the court permitted Mr. Platner to testify as to these conversations. The net result of Mr. Platner's testimony is that he told Ruedy he could have the·use of the sewer only. Ruedy flatly contradicts this and claims that Platner told him, as an inducement in selling him the property, that the sewer cost $2,700 and also that Ruedy might possibly get $2,000 selling rights to other persons desiring to connect with the sewer. Plaintiff also testifies that he made a written memorandum on the day the deed was delivered, which he says he gave to Ruedy, but kept no copy thereof. He then attempted to testify as to the contents of the written memorandum, but the court sustained an objection to the same. Plaintiff complains of this ruling, having made an offer to show that the instrument if produced would show that Ruedy was to have the use of the sewer in ·connection with the home, but that the title would remain in Platner. Mr. Ruedy denies that there was ever any such memorandum. Even if it were to be conceded that this memorandum would be competent evidence, we do not believe that the exclusion of Platner's testimony as to what the alleged instrument contained is error. Mr. Platner was permitted to testify as to the conversations, and these conversations were the conversations which he says he incorporated in a memorandum. In other words, Mr. Platner's testimony as to the conversations between himself and Ruedy are in the record, so the testimony of Mr. Platner as to an alleged memorandum would throw no further light upon the meaning of the deed. We do not think, after reading the record, that, even had this evidence been admitted, the district court would have made any decision other than the one it did make.

Plaintiff, over the objection of defendant, having given oral testimony as to the meaning of the deed, cannot, and does not, contend in this court that the same is inadmissible. Defendant does not object here, the trial court having found in his favor. Consequently, we do not consider that this proposition of law is now before us. The trial court found

generally for the defendants. Under the well-known rule in this court, the trial judge, when a jury is waived, steps into the shoes of the jury and his decision has the same effect as a verdict. This decision will not be disturbed under ordinary circumstances, the trial court having had the opportunity to observe the witnesses and thus being in a better position than this court in passing upon their credibility. We doubt that we need go further.

But in addition to finding generally for the defendant Ruedy, the trial court made a specific finding that the plaintiff did intend to, and did, by the terms of the deed convey the legal title to the sewer. It thus appears that the court considered not only the testimony, but the legal effect of the deed itself in making its decision. For that reason, we go to the proposition of law as to whether the deed standing alone, regardless of parol evidence, transferred the title to the sewer as an appurtenance. We find no Nebraska authority on this question, and, in fact, no authority directly in point has been cited by counsel. In the first brief filed in this court by appellant, the position was taken that the county had no title to this sewer. In appellant's reply brief he seems to agree with McMartin that the county does own the sewer. Douglas county is not a party to this suit. It makes no claim to the sewer in so far as this action is concerned, so we do not comment on this feature of the case. Trial was had July 15, 1940. August 7, 1940, judgment was entered. August 8, 1940, plaintiff filed motion for new trial. August 27, 1940, plaintiff asked leave to file an amended petition alleging that plaintiff, as against the defendant, had acquired an easement in the sewer and also that defendant's counterclaim was barred by the statute of limitations. This motion was denied. Plaintiff specifies this ruling as error. We think that the trial court used proper discretion in overruling the motion. We think his principal contention is, however, that Ruedy is entitled only to the use of the sewer, and in support of that theory he cites the case of *Mulrooney v. Obear,* 171 Mo. 613, 71 S. W. 1019, which case we think more nearly sets out plaintiff's

position than any other case cited. In that case a company platted a subdivision adjoining the city of St. Louis. A water supply pipe was placed in a public road and connected with the water-works of the city. In selling its lots the company reserved strips of land as alleyways and in these alleys it laid service water pipes. The company gave a deed to a house and lot which conveyed also the appurtenances. The company finally wound up its affairs and sold the water pipes in the alleys, together with the connection to the city water supply to Obear. Obear purchased water from the city and attempted to collect for the same from the grantee. The grantee refused to pay and Obear threatened to disconnect his water supply. The grantee then brought an injunction action to prevent this. The Missouri court held that the pipe in the alley did not pass as an appurtenance, but that the pipes leading into the grantee's premises were appurtenances, and held that the grantee did not own the water pipe in the alley, but had a right under the deed to use the same.

We believe that the meaning of the word "appurtenances" must be determined by the circumstances attending this transfer. It would seem that the sewer in question should be deemed an appurtenance. The city of Omaha has steadily grown westward, and it is difficult in retrospect to visualize the situation in 1928. The evidence shows that Mr. Platner's residence at that time was a country home. It stood in an isolated position and was a living unit in itself. The sewer was built primarily for the use of this house. Mr. Platner owned no other real estate in the vicinity and no other real estate was served by this sewer. Except for the fact that it connected with the city sewer, the situation differed little from a house situated on a farm out of which a sewer might lead under a public road. If Mr. Platner had not purchased a lot in the vicinity at a later date, the sewer surely would have been considered by the parties an appurtenance. We think that under the terms of the deed Platner could well, as between himself and Ruedy, refuse to repair or keep the sewer in condition. No reservation of the sewer was made

in the deed as would have been the natural thing to do. We think that this indicates that Mr. Platner did not intend to keep the title to the sewer in himself. Under these circumstances we do not think that the *Obear* case is analogous to the case at bar. We believe that the judgment of the district court is right.

AFFIRMED.