ANTHONY v. BARTON et al.

No. 31688.   Dec. 18, 1945.

*164 P. 2d 642.*

John R. Miller, L. O. Lytle, and Roy T. Wildman, all of Sapulpa, for plaintiff in error.

R. E. Stephenson and R. K. Robertson, both of Sapulpa, for defendants in error.

OSBORN, J. This is a suit for injunction brought by G. K. Barton as plaintiff against S. W. Anthony and Oklahoma Gas & Electric Company as defendants. Upon the filing of the petition the court granted a temporary restraining order, and thereafter, upon the petition of T. M. Childers and Goldie G. Childers, permitted them to join in action as parties plaintiff. The court upon final hearing rendered judgment in favor of plaintiffs, and from such judgment the defendant Anthony alone appeals.

Barton in his petition alleged that he was the owner of a farm near Mounds, Okla.; that in 1922 one Joe Berryhill, who originally owned a farm near Mounds, constructed a line for the transmission of electricity from the town of Mounds to his farm; and that one F. H. Morris, the grantor of Barton, purchased from Berryhill the right to receive electricity from such power line and constructed a line connecting the farm now owned by Barton to the Berryhill line, and that thereafter the Oklahoma Gas & Electric Company furnished power to Morris and to Barton after his purchase of said farm from Morris; that the line had been dedicated by Berryhill for public utility purposes, and that Berryhill could not withdraw the property from such use except in accordance with law; that defendant Anthony claimed some interest in the said power line, and that the defendants were threatening to discontinue electric service on said line, which would result in irreparable damage and injury to plaintiff, and prayed for an injunction. Thereafter Barton filed a supplemental petition in which he adopted the allegations of his original petition; alleged that his predecessor, Morris, purchased an interest in the said electric line from Berryhill and that said interest was conveyed to Barton by his deed from Morris and that Anthony was threatening to remove and take away said electric line, and renewed his prayer for injunction and for such other and further relief as he might be entitled to. This supplemental petition was filed on January 25, 1943, and on January 28, 1943, T. M. Childers and Goldie G. Childers, having been made parties plaintiff, filed a petition adopting the allegations of the petition and supplemental petition of Barton, alleged that Berryhill sold his farm, referred to in Barton's petition, to one C. F. Ashley on November 14, 1928, and that by regular chain of conveyances Berryhill's title had vested in them, and that they and Barton now owned said electric line jointly; that Anthony had pretended to purchase the said line from Berryhill and Morris, which conveyances constituted a cloud on the title of plaintiffs to said line and farm; asked that the court enjoin the defendants from removing said line and from discontinuing the electric service, and to quiet the title to said electric line in the plaintiffs, and for other and further relief.

Defendants filed numerous motions to strike either the original or supplemental petition of Barton; to strike the petition of Childers for the reason that the parties were improperly joined, and to dissolve the restraining orders for the reason that the court had no jurisdiction, all of which were by the court denied. Demurrers filed by both defendants were also overruled. In his

answers Anthony denied the allegations of the petition and supplemental petition of Barton, and the petition of Childers, and alleged ownership of the electric line by virtue of his bills of sale from Berryhill and Morris. The Oklahoma Gas & Electric Company in its answer challenged the jurisdiction of the court to make any order affecting its duties as a public service corporation; alleged that it had never rendered any service to the Childers, and that it could not do so because of the defective condition of the poles and wires between the Barton farm and the Childers farm.

Defendant makes numerous assignments of error, which, for the sake of brevity, may be divided into two classes or groups. The first group relates to the pleadings. Defendant contends that the original and supplemental petitions filed by Barton present two irreconcilable theories or causes of action; that these causes of action were improperly joined, and that the trial court erred in not sustaining his various motions to strike the petition or supplemental petition, or to require Barton to separately state and number his causes of action. We think the motions were properly overruled. The petition and supplemental petition stated but one cause of action. In effect, they alleged ownership of the electric line, or ownership of such a right therein as would preclude the discontinuance of service to Barton, and that the line was so dedicated to public use that service could not be discontinued and the line removed. The gist of the action was the right to continue to receive service by reason of the purchase of that right by the predecessor in title of Barton, and the continued exercise of that right by Barton, and the two theories were apparently intended to be in the alternative and were so considered by the trial court. This was not a statement of two causes of action. Garfield Oil Co. v. Crews, 134 Okla. 229, 273 P. 228. For the same reason defendant's demurrer on the ground of misjoinder of causes of action and his motion that Barton be required to elect were properly overruled.

Defendant also contends that the cause of action of T. M. Childers and Goldie G. Childers was not such that they could join with Barton as plaintiffs, but should have been required to file a separate action, and that the trial court should have sustained his motion to strike their petition, and to dismiss the action because of an excess of parties plaintiff. But in their petition the Childers alleged joint ownership of the line by them and Barton, and joined with Barton in asking for injunctive relief. Thus the pleadings showed that all plaintiffs would be affected by the wrongful acts sought to be enjoined, and that all had an interest in the line. The trial court did not err in overruling these motions or in overruling demurrers based on the same grounds. Meshek v. Cordes, 164 Okla. 40, 22 P. 2d 921.

The second group of assignments relate to the findings of fact and conclusions of law made by the trial court, and the judgment rendered. All the deeds under which the plaintiffs claimed were introduced in evidence and each conveyed the land and "appurtenances."

The evidence established that Berryhill constructed the line in 1922, and that in 1928 he sold his farm to C. M. Ashley and Gladys Ashley by warranty deed conveying the land "together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining," and delivered the possession thereof to plaintiff's grantors. The line was built to serve that farm, and so far as the record shows, Berryhill owned no other land in that vicinity. In that deed he did not reserve or except the line or any part thereof. By mesne conveyances, each conveying the land and appurtenances, the title so conveyed, and the possession of the land and appurtenances, vested in the Childers. From the date Berryhill sold the farm in 1928, the line continued to

be used by the various owners of the farm, except for a period of about four years, when a tenant of the then owner discontinued the use of electricity because he thought it too expensive. It was used by Morris until he sold his farm to Barton in 1940, and continued to be used by Barton up to the time this action was filed. The record is wholly devoid of any evidence indicating that either Berryhill or Morris, when they sold and conveyed their respective farms, intended to reserve or retain any right or interest in the physical property of which the line was composed, or any right to use the line. Nor did the evidence disclose why, in 1943, Berryhill attempted to sell the line to Anthony. Berryhill testified by deposition as a witness for Anthony, but did not testify to any fact indicative of continued ownership of the line by him, or to the reason or motive which led him to make a bill of sale of the line to Anthony. Nor is there anything in the testimony of Anthony which throws any light upon the transaction. The trial court, after hearing the evidence adduced by plaintiffs and defendant, found that Berryhill owned the farm now owned by the Childers, and that he constructed the electric line; that Morris made a connection with said line, and that the Oklahoma Gas & Electric Company had thereafter, and for more than 15 years, furnished electric service over said line; that Barton acquired the Morris farm in 1940, and that Berryhill sold his farm in 1928, and that title thereto was now vested in T. M. Childers and Goldie G. Childers; that the electric line was an influencing factor in the purchase of said land by the Childers, and that as an additional precaution they took a bill of sale of the line from their grantor. The court further found that defendant claimed ownership of the line by bills of sale from Berryhill and Morris, and that the Oklahoma Gas & Electric Company had notified Barton that at defendant's request it was discontinuing further service; that the poles and wires composing the line were those originally put in by Berryhill, and that

the Oklahoma Gas & Electric Company had, since 1922, furnished electricity to Barton and his predecessor in title, and to other users of electricity, over said line.

In its conclusions of law the court held that the line was attached to the Berryhill farm, that it was an appurtenant easement necessary to the enjoyment thereof, and that title thereto was by the deeds from Berryhill and Morris conveyed to their grantees, and that defendant acquired no title to said line by the bills of sale from Berryhill and Morris. It rendered judgment quieting the title of plaintiffs to said line, and enjoining defendant, and all claiming through or under him, from asserting title thereto or disturbing the peaceable use thereof by plaintiffs. It enjoined the Oklahoma Gas & Electric Company from discontinuing service to Barton, but did not require it to serve the Childers farm because of the defective condition of parts of the line running to that farm. The Oklahoma Gas & Electric Company does not appeal.

Defendant urges that the line is an easement, and that, in order to establish that it passed by the deeds of conveyance, plaintiffs must show that is was a necessity. He contends that this is not shown; that the evidence shows that the tenant of the predecessors in title of the Childers had not used electricity for more than four years prior to the date they acquired the Berryhill farm, and that Barton could have constructed a line from his house to the town of Mounds which would have been shorter than the line as now used by him. He also asserts that by taking a bill of sale from their grantor the Childers recognized the fact that the line did not pass by the deed from such grantor to them.

While the electric line was referred to as an easement, both in the pleadings and in the findings of fact and conclusions of law made by the trial court, that term appears to have been used not as a definition of its true nature, but rather for convenience. Strictly speak-

ing, the line was not an easement, as that term is defined by 60 O. S. 1941 § 49. It was an improvement affixed to the land, an appurtenance, as defined by 16 O. S. 1941 § 14. That section reads as follows:

"The words 'land,' 'real estate' and 'premises' when used herein or in any instrument relating to real property, are synonyms and shall be deemed to mean the same thing, and unless otherwise qualified to include lands, tenements and hereditaments; and the word 'appurtenances' unless otherwise qualified shall mean all improvements and every right of whatever character pertaining to the premises described."

That part of the line which was upon the land of plaintiffs is conceded to be their property. But if the part on the land of plaintiffs is severed from that part on the public highway it is of no value to plaintiffs and cannot be used for the purpose for which it was intended. The line was built and used for the purpose of furnishing the Berryhill farm with electricity. It was, when completed, a single structure. Western Electric Co., Inc., v. Cooley, 79 Cal. A. 770, 251 P. 331. In that case the court, referring to an electric power line partly upon a public highway, said that it constituted property appurtenant to the land, that it was a creation or improvement entering into the value of the land, and would pass as an appurtenance by a conveyance of the land.

In Fechet v. Drake, 2 Ariz. 239, 12 P. 694, the court held that the poles and wires of an electric light system were fixtures or appurtenances, and were covered by a mortgage of the lot on which the plant was located, which mortgage covered the lot and the "tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining." To same effect is Keating Implement & Machine Co. v. Marshall Electric Light & Power Co., 74 Tex. 605, 12 S. W. 489.

In Platner v. McMartin, 139 Neb. 814, 299 N. W. 182, the court held that a sewer line, built by the owner of a residence to a point where it connected with the sewer system of a nearby city, passed as an appurtenance by a conveyance of the property, although the greater part of the line was located on the public highway. In this case the court said:

"We believe that the meaning of the word 'appurtenances' must be determined by the circumstances attending this transfer. It would seem that the sewer in question should be deemed an appurtenance. The city of Omaha has steadily grown westward, and it is difficult in retrospect to visualize the situation in 1928. The evidence shows that Mr. Platner's residence at that time was a country home. It stood in an isolated position and was a living unit in itself. The sewer was built primarily for the use of this house. Mr. Platner owned no other real estate in the vicinity and no other real estate was served by this sewer."

The evidence plainly and conclusively establishes that Berryhill erected this electric line for the sole purpose of conveying electricity to the farm now owned by the Childers, which farm was his home when he built the line in 1922. There is nothing in the record indicative of any intent on his part to operate the line as a business venture separate and apart from the farm. The fact that he permitted his neighbor, Morris, to connect his farm with the line at his own expense, for which privilege Morris paid him $100, negatives the idea that Berryhill built the line for the purpose of making a profit by supplying electricity to others. The line was an adjunct to the farm, and additional improvement or convenience, just as was the private sewer in Platner v. McMartin, supra, and upon the conveyance of the farm passed to the purchaser as an appurtenance thereto, subject only to the rights of Morris. And from the testimony of Morris it is clear that when he conveyed his farm to Barton he intended to and did convey all his rights in the line.

Defendant argues that the Childers, by taking a bill of sale from their gran-

tor, conceded that the line was personal property, which did not pass to them by their deed. Since we hold that the line passed with the first conveyance of the farm by Berryhill, and that defendant did not acquire any right or interest therein by the bills of sale from Berryhill and Morris, this argument is without force.

Furthermore, it appears from the evidence that the tenant in possession of the Berryhill farm at the time the Childers bought had not been using electricity through the line for some four years and that the line was in need of repairs. For this reason apparently the Childers took the bill of sale in addition to their deed in order to be absolutely sure that they acquired from their immediate grantor the ownership of the line. The fact that they made no effort to acquire additional conveyances from Berryhill or the owners in whom title to the farm vested subsequent to Berryhill's conveyance thereof indicates that they considered title to the line vested in their immediate grantor.

Defendant also complains that the trial court did not hold a hearing on the motions filed by them to dissolve the temporary restraining order made by him in the case, but required them to file answers and heard the whole matter at one hearing. The court indicated that because of the volume of business and lack of time he was disinclined to hold several hearings in the matter and desired to dispose of it at one hearing. This was within the discretion of the court and no prejudice is shown to have resulted to defendant by such action. The findings and judgment of the court are clearly right and are sustained by the law and the evidence.

Affirmed.

GIBSON, C. J., HURST, V. C. J., and BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.