**Lela HURST and Floyd Hurst, Plaintiffs in Error,**

**v.**

**Amos STOWERS, Lloyd Holt, Buddy Stowers and B. D. Stowers, Defendants in Error.**

**No. 40721.**

Supreme Court of Oklahoma.

Feb. 9, 1965.

Joseph O. Minter, Madill, and Welch & Dudley, Madill, by Edwin W. Dudley, for plaintiffs in error.

Wallace & Bickford, by Wilson Wallace, Ardmore, for defendants in error.

WILLIAMS, Justice.

The question to be determined in this appeal is whether the road here involved has been traveled continuously by the public adversely to the record landowner for at least the prescriptive period so as to constitute it a public road.

The action from which this appeal arises was initiated by defendants in error against plaintiffs in error. Our continued reference to the parties is as they appeared in the trial court.

In their petition plaintiffs alleged that the road here involved traversed defendants' property; that such was "a public

dedicated road by prescription"; that it "has been recognized as such by the defendants and plaintiffs and by all others"; that "it has continuously without interruption been used as a public way for more than 15 years".

Following a hearing including the taking of testimony, the trial court in its "Journal Entry of Judgment" "determined that said roadway is a public road and a further order should be entered, whereby the defendants, Lela Hurst and Floyd Hurst, are hereby restrained from interfering with the use of said road by the public".

In 1957 the county commissioners of Marshall County brought suit against these present defendants and one Frank Stowers to have the road here involved declared to be a public road. In the "Journal Entry of Judgment" in that case the trial court held:

"IT IS THEREFORE ORDERED, CONSIDERED, ADJUDGED AND DECREED BY THE COURT that judgment should be and the same is hereby herein rendered in favor of the defendant, Frank Stowers, and against the plaintiff, The Board of County Commissioners of Marshall County, Oklahoma, and the road in question is hereby adjudged and determined by this Court to be a private road, due to the failure of plaintiff to prove its right and title thereto by prescription and adverse possession."

In 1958 the present plaintiffs initiated an action against the present defendants and Frank Stowers to have the road here involved declared to be a public road. Plaintiffs therein alleged that such road had been used by them and others as a public way for more than fifteen years.

After a hearing including the receipt of testimony, the trial court there issued its "Order Vacating Temporary Restraining Order", dated June 17, 1958. Therein the trial court made the following order, to-wit:

"IT IS ORDERED, CONSIDERED, ADJUDGED AND DE-CREED BY THE COURT that the temporary restraining order heretofore entered herein be and the same is hereby vacated, set aside and held for naught;

"IT IS FURTHER ORDERED, CONSIDERED, ADJUDGED AND DECREED BY THE COURT that until otherwise ordered by this Court, the road in question is a private road, and not public property, but that the defendants herein have voluntarily agreed that the residents in the vicinity of the road in question may use such road, with the understanding that the gates which are there shall be replaced and put up each time anyone does use the road in question, and such permission is approved by this Court PROVIDED every person so using said road shall immediately replace the gates across said road when through the same."

(No appeal from this order was taken.)

For reversal of the judgment involved in the present appeal, defendants advance two propositions. The second is that "The trial court should have sustained the defendants' demurrer to the plaintiffs' evidence." We deem this to be the equivalent of an argument that based upon the evidence the trial court should have found for defendants.

Plaintiffs maintain that "The issue in the case which is now on appeal to the court is the question of whether or not the road in question had been used for the prescriptive period to require the same to remain open. * * * As will be noted by all of the evidence appearing in the transcripts, the entire evidence produced by the plaintiffs and the defendants was based upon the running of the prescriptive period, * * *."

In 2 C.J.S. Adverse Possession, § 153 Legal Proceedings, p. 723, is the following language:

"In some jurisdictions the commencement of litigation between the

record owner and the adverse claimant in possession, involving the right of ownership and possession of the land, will interrupt the continuity of the adverse claimant's possession."

Cited in connection with such statement in the case of Johnson v. Johnson, 182 Okl. 293, 77 P.2d 745. In such case at page 746 of the Pacific Second Reporter we stated:

"In our opinion, the continuity of her adverse possession was broken. The general rule is that the bringing of an action involving the title to the land will interrupt the running of the statute of limitations. 1 Am.Jur. 891, § 170, and 2 C.J.S., Adverse Possession, p. 723, § 153 et seq. It is proper to say at this point that this particular issue seems to be new in this state, and that the decisions of the courts of other states are not harmonious."

It is recognized that the present appeal and the action from which it arose relates to an alleged right to use a road rather than actual possession of lands. However, we believe the same principles should be applied.

The continuity of plaintiffs' and others' adverse use was interrupted by defendants' defense of the 1958 action initiated by plaintiffs wherein plaintiffs sought to have the road here involved declared to be a public road by reason of the use of it by them and others for more than fifteen years.

As has been noted in the foregoing quotation of the trial court's order of June 17, 1958, in the prior case between the parties to the present action, that order was in two parts. The second part decreed that the road there in question (being the same road as the one in qeustion here) was a private road and not public property.

While it may be that that portion of such order was interlocutory it would appear that the defense of the action to so successful a conclusion and a maintenance of gates in their fences by defendants Hurst, even though same were thrown back on occasion by plaintiff Amos Stowers' sons, and the maintenance by defendants of signs at such gate-ways reading "private property" served to break the continuity of any adverse user of the road by plaintiffs and/or other members of the traveling public.

In this connection it is to be noted that plaintiff, Amos Stowers, himself testified:

"Q: Mr. Stowers, isn't it true that in 1957, before this law suit was filed, that you came up and talked to the County Attorney about your right on this road as being a private road?

"A: Yes. He said there was no easement on it, it was a private road, and I could do anything I wanted to.

"Q: In 1957?

"A: Yes, sir.

"Q: And didn't he instruct you after that cow got run over to go back and put those private road signs up?

"A: He said if I could, yes, sir. That's what he said, said that's the only way to protect them.

"Q: All right, sir. And that is the road that leads directly into the south end of the—

"A: That's the road. On Floyd's end, then there is another house.

"Q: But that road leads directly into the south end of the Hurst property?

"A: That road goes plumb through there. Yes, sir. It goes plumb through to Simpson.

"Q: Yes, sir. But it leads right into the road that goes into Mr. Hurst's?

"A: Yes, sir.

"Q: In other words, your property lines meet right there?

"A: Yes, sir.

"Q: But it was your attitude in 1957, that this road was a private road?

"A: Well, that's what he said. But the public has been traveling it ever since, it never has been closed to nobody.

"Q: Did the County, Marshall County, bring a law suit trying to establish that it was a public road?

"A: Yes, sir.

"Q: And they were defeated; is that right?

"A: Yes, sir.

"Q: And then you brought a law suit in 1958, trying to establish—

"A: Well, I don't know about that; might have brought one. But it was Frank, it wasn't Floyd, at the time we started the law suit.

"Q: The hearing that you had before Judge Phillips, it was on the same road?

"A: Yes, I imagine it was.

"Q: And it was on the same idea, that you were trying to establish that it was a public road, isn't that right?

"A: Yes, sir. But it's been public ever since. Ain't nobody but the mail and the school bus come down it all these years while it was closed up.

"Q: All right. Mr. Stowers, since 1958, after Judge Phillips was up here and heard this case, and he dismissed the case, did Mr. Hurst put up a private property sign on his end?

"A: Well, I don't know. I didn't see any but he could have had some.

"Q: He could have had some?

"A: Yes, he could. I wasn't there."

■ Any adverse use of such road which could form the basis of the present action could not begin anew until after that action was concluded which was with the filing of the order of the trial court dated June 17, 1958. See Johnson v. Johnson, supra, at page 747 of Pacific Second Reporter.

Therefore, plaintiffs did not and could not show as much as fifteen years' open, notorious, adverse, and continuous use of the road here involved as of June 3, 1963, when they filed the action from which this appeal arises. See Johnson v. Johnson, supra, and Norman v. Smedley, Okl., 363 P.2d 839.

The basis of plaintiffs' action in 1958 was the same as in the instant case, i. e., that they and others had acquired a prescriptive right to the use of such road.

As noted hereinabove in its order dated June 17, 1958, the trial court found that "the road in question is a private road, and not public property". This finding by the trial court constituted a determination that up to the time of the filing of that action plaintiffs and others had not acquired a prescriptive right to the use of such road. In view of our prior determination herein that the prescriptive period had to begin anew subsequent to June 17, 1958, and the fact that fifteen years have not elapsed since that date, we hold that plaintiffs and others have not acquired a prescriptive right to the use of such road.

In Board of County Commissioners of Tulsa County v. Lloyd, Okl., 322 P.2d 406, in the syllabus we held:

"To establish an easement for roadway by prescription, the land in question must have been used by the public with the actual or implied knowledge of the landowners, adversely under claim or color of right, and not merely by the owners' permission, and continuously and uninterruptedly, for the period required to bar an action for the recovery of possession of land or otherwise prescribed by statute; when these conditions are present, the easement for roadway exists by prescription, otherwise not."

In Norman v. Smedley, supra, we held that in an adverse possession action the proof must be clear and positive.

■ The case of Messinger v. Messinger, Okl., 341 P.2d 601, 604, contains certain language we consider applicable to the instant case as follows:

"In ordinary cases of equitable cognizance, the findings of the trial court will not be disturbed on appeal unless clearly against the weight of the evi-

dence, but where, as here, a particular fact is required to be established by proof of a certain degree or character, the two rules must be taken and considered together, and in such cases this court upon appeal will weigh the evidence and determine whether or not the proof conforms to the required standard. Norton v. Moore, supra [Okl., 261 P.2d 196]; McCrory v. Evans, 192 Okl. 649, 138 P.2d 823. * * *"

The judgment of the trial court is reversed with directions to enter judgment for defendants.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, JOHNSON, BLACK-BIRD, IRWIN and BERRY, JJ., concur.