2003 OK 51

Jack D. MOONEY and Bobbye D. Mooney, Plaintiffs/Appellants/Counter–Appellee,

v.

Jerry L. MOONEY, Sr., E. Sue Mooney, and Jerry L. Mooney, as Trustee Under the Declaration of Trust dated January 24, 1983, Defendants/Appellees/Counter–Appellants.

Nos. 96,014, 96,025.

Supreme Court of Oklahoma.

May 20, 2003.

Bill R. Scarth, Scarth & Rahmeier, Claremore, OK, for Plaintiffs/Appellants/Counter–Appellees.

Tony Jack Lyons, Lyons & Lyons, Pryor, OK, for Defendants/Appellees/Counter–Appellants.

SUMMERS, J.

¶1 Our job here is to sort out competing claims between two brothers, each of whose land abuts the other's. We affirm the trial court's finding of an easement by implication, reverse its award of damages in division of a shop building as being contrary to the clear weight of the evidence, and affirm its denial of damages for a destroyed dog pen. The matter is remanded on the shop building issue.

¶2 Two brothers live as neighbors, and for many years shared a driveway for access to their respective homes. One brother improved the driveway and wanted the other to build his own. They disagreed over this and related matters, and the dispute resulted in a court proceeding involving one brother attempting to exclude the other brother's use of the driveway.

¶3 Jack and Bobbye Mooney, husband and wife, purchased a one-hundred acre tract in 1982.[1] The hundred acres includes the north half (80 acres) of a quarter-section (160 acres), and an additional twenty acre tract. Jack and Bobbye have a home in the southeast corner of the west half of the 80 acres. In 1983 Jack and Bobbye sold forty acres of the original 100 acres to Jerry, Jack's brother. In 1985 Jerry and his wife, Sue, completed their home not far from the home of Jack and Bobbye. In 1992 Jack sold an additional twenty-acres to Jerry.[2]

¶4 An open public road runs north and south along the west boundary of Jack and Bobbye's property. Jack's driveway to his home runs on the south boundary of his property and connects to this road. See Diagram at Appendix A. The driveway is twelve feet wide, and two to six feet are on Jack's property, and the remaining ten to six feet are on the property belonging to Jack's neighbor to the south, who is not a party to this litigation.

¶5 Jerry and Sue lived in a house on Jack's property and used the driveway.

1. Jacks' property is described two different ways by the trial court in its judgment of October 4, 2000. The property is described in the "Introductory Information" and the "Findings of Facts" portions of the judgment O.R. at 118 and 120. The descriptions are not identical. In the "Introductory Information" the property is described as "The NW ¼ of NW ¼ of Section 21, Township 22 North, Range 17 East of the I.B. & M., Rogers County, Oklahoma, according to the U.S. Government Survey thereof." O.R. at 118. In the Findings of Facts the same tract is described as "the NW ¼ of the NW½ of Section 21, Township 22 North, Range 17 East, Rogers County, Oklahoma." O.R at 120.

The description in the Findings of Facts is incorrect. The stated source for this description is Plaintiff's Exhibit No. 6, General Warranty Deed from Kiska Oil Company to Jack and Bobbye Mooney. The deed states a conveyance of "The N ½ of NW ¼ and W ½ of SE ¼ of NW ¼ of Section 21, etc." In the NW ¼ of Section 21 (160 acres) Jack originally had the north½ (80 acres) and an additional 20 acres "W ½ of SE ¼ of NW ¼ of Section 21." Jack kept 40 acres, (west ½ of the north½ of the NW ¼ of Section 21). The language in the original deed to Jack and Bobbye and Jack's conveyances to Jerry agree with the description of Jack's 40 acres in the "Introductory Information" portion of the trial court judgment.

2. "Jerry's" property is described by the trial court in its judgment as three twenty-acre tracts: (1) the W ½ of NE ¼ of NW ¼ of Section 21; (2) W½ of SE ¼ of NW ¼ of Section 21; and (3) the E ½ of the NE ¼ of NW ¼ of Section 21; all in Township 22 North, Range 17 East of the I.B. & M., Rogers County, Oklahoma. Judgment, at II(B), O.R. at 120.

When Jerry and Sue's home was completed on Jerry's property they moved, and continued using Jack's driveway as a driveway to Jerry and Sue's home. Jerry testified that prior to his purchase of the property the brothers referred to the driveway or road as "our entrance and exit."

¶ 6 The driveway existed prior to Jack and Bobbye's purchase of their property. For many years the driveway was gravel, and Jack and Jerry split the cost of additional gravel to maintain it. The county placed asphalt on the driveway/road, and within one to two years thereafter, in 1995, Jack installed a concrete surface on the driveway up to his house. Jack extended the concrete to the west side of the shop building and to the back of the shop building. In 1995 Jack installed an electronic gate on the driveway and gave Jerry access to the gate.

¶ 7 Jack later asked Jerry to install a driveway solely on Jerry's property, and to discontinue using the driveway on the south boundary. Jack testified that he did not like the recent traffic resulting from Jerry's ranching operation, nor Jerry's cattle on his property, nor Jerry letting others possess the security code to the electronic gate.

¶ 8 In the southeast one-acre corner of Jack's forty acres is a shop building. The building is constructed of steel and attached to a concrete slab with concrete footings. It is approximately one-hundred feet long. Also in this one acre is the septic tank for the shop building, and a water well that supplies water to both the shop building and Jerry's home.

¶ 9 Jack pays the property tax on the shop building and maintains insurance on it. Jack testified that the agreement between him and Jerry is that they are partners in the building and each entitled to 50% of it. Jack's house is on the west side of the shop building, and concrete driveways come from his "housing area over to the bay doors in the west side of the building." On the east side of the shop building is a gravel drive connecting to Jerry's driveway and the common driveway on the south boundary. See Appendix A.

¶ 10 Jack installed a fence along a portion of the boundary between him and Jerry. In 1999 when he returned from a vacation he discovered the fence missing. Jack then filed suit to quiet title to his forty acres and to stop Jerry from using the driveway and shop building. At trial Jack stated that he would allow Jack to use water from his well, and he had no objection to the placement of underground and overhead electric lines. Jerry claimed that he owned 70% of the building and a "way of necessity" along the driveway. Jerry further claimed damages for destruction of his dog pen that had been on, or mostly on, Jack's property.

¶ 11 The trial court determined that the use of the driveway was "reasonably necessary" for Jerry's use and enjoyment of his property. The court awarded the shop building to Jack, and gave Jerry a judgment against Jack for $12,500, an amount representing Jerry's 50% of the building. The court observed that no evidence was provided on the fair market value of the dog pen, and denied this claim. The court stated that Jerry could continue to use water for his home from Jack's well, and that the electric lines supplying Jerry's home would remain. The court further ordered that the septic tank for the shop building was awarded to Jack. Jerry filed a motion for new trial, and it was denied by the trial court.

¶ 12 Jack brought an appeal challenging the award of the easement. Jerry brought a counter-appeal and challenged how the trial court described the easement, the amount of damages he was awarded for the shop building, the trial court's denial of his claim for the dog pen, and the denial of his motion for new trial.

¶ 13 The Court of Civil Appeals affirmed in part and reversed in part. It affirmed the judgment against Jack in the amount of $12,500 for Jerry's interest in the shop building. It also affirmed the trial court's denial of Jerry's claim for damages based upon the removal of his dog pen. The trial court was reversed on the issue of Jerry's easement. Jerry sought certiorari seeking review of the appellate disposition of his easement and claims relating to the shop building and dog

pen. Jerry also seeks review of the trial court's denial of his motion for new trial.

## I. The Order Declaring Existence of an Easement

¶ 14 The trial court's order stated that Jerry possessed an "implied easement by reasonable necessity." The appellate court distinguished an implied easement from an easement by necessity, and concluded that the trial court found an easement by necessity. The appellate court concluded that the evidence was insufficient to support a claim of easement by necessity, and reversed the court's judgment on this ground.

¶ 15 The appellate court noted that Jerry's cross-petition claimed a "way of necessity." Jerry's trial brief claims a "prescriptive right to use the road, and/or that it was an incorporeal hereditament, and an appurtenance to his land." The appellate briefs discuss both implied easements and easements by necessity. One of Jerry's appellate briefs argues that the trial court found an implied easement, and that the evidence supports such finding. Appellee's Answer Brief at 2–4. Jerry argues on certiorari that the trial court found an implied easement, and that necessity is an element of an implied easement.

¶ 16 Jack points out in his trial brief that Jerry claimed the driveway based upon theories of prescription, implied easement, and way of necessity. The trial court record shows that Jerry claimed the driveway using all of these theories. Jerry also claimed that the driveway was granted as an "appurtenance" conveyed to Jerry from Jack by two deeds. See O.R. at 46, Defendants' Final Argument and Proposed Findings of Fact and Conclusion of Law.[3] One question for us on certiorari is whether the trial court found

an implied easement, and if so whether this finding was supported by the evidence.

¶ 17 In *Story v. Hefner*, 1975 OK 115, 540 P.2d 562, we said that an easement "is the right of one person to go onto the land of another and make a limited use thereof." *Id.* at ¶ 13, 540 P.2d at 566. Easements may be expressly created by deed, or by necessity, or prescriptive use, or implied in a deed. *Id.* We described an implied easement thusly:

> An implied easement is a creature of common law. It is based on the theory that whenever one conveys property he includes or intends to include in the conveyance whatever is necessary for its beneficial use and enjoyment and to retain whatever is necessary for the use and enjoyment of the land retained. An easement by implication is a true easement having permanence of duration and should be distinguished from a 'way of necessity' which lasts only as long as the necessity continues.

*Story v. Hefner*, 1975 OK 115, ¶ 14, 540 P.2d at 566.

Jerry correctly points out that "necessity" is one element to an implied easement, and that the trial court's use of the phrase "reasonable necessity" is consistent with its use of the phrase "implied easement" in awarding an easement to Jerry.

¶ 18 In *Story* we discussed the "necessity" to establish an implied easement, and said that:

> The necessity requisite to the creation of an easement by implication is not an absolute necessity, a reasonable necessity is sufficient. Where, during unity of title, an apparent permanent and obvious servitude is imposed on one part of an estate in favor

---

**3.** The trial court made no express finding of fact on Jerry's claim that the road was an appurtenance, except to the extent that it found that: "The Defendants right to rights in said road are not found in any specific instrument or instruments of transfer to them by the Plaintiffs." O.R. at 121. "Appurtenances," unless otherwise qualified, means "all improvements and every right of whatever character pertaining to the premises described." 16 O.S.2001 § 14. *See, e.g., Anthony v. Barton*, 1945 OK 342, 164 P.2d 642, 645–646, (private electric line located partly

on public highway and supplying farm with electric power was an appurtenance which passed by deed conveying land and appurtenances). The only appellate challenge Jerry makes to the trial court's grant of an easement is that it was not sufficiently described. We do not address Jerry's other theories for an easement since they are not before us for review. *See Reddell v. Johnson*, 1997 OK 86, 942 P.2d 200, 202, (an appellate court is generally confined to the issues raised by the parties and presented by the proof, pleadings, petition in error and briefs).

of another, and such servitude, at time of the severance, is in use and is reasonably necessary for fair enjoyment of the dominant estate, a grant or reservation of the right to continue such use arises by implication of law.

*Story v. Hefner*, 540 P.2d at 566, *citing, Keller v. Fitzpatrick*, 1951 OK 49, 228 P.2d 367; *Gorman v. Overmyer*, 1947 OK 136, 190 P.2d 447.

In *Story* we relied upon *Keller* and *Gorman* for the rule that "absolute necessity" was not required. Both *Keller* and *Gorman* are cases involving driveways, and are instructive.

¶ 19 In *Keller* the parties owned adjoining lots and each had access to a street by a U-shaped driveway connecting the lots to the street. *Keller*, 228 P.2d at 369. Because of the narrowness of this U-shaped driveway it was historically treated by the residents as one-way, and the automobiles entered one leg of the driveway and exited the other. We noted the difficulty in backing and turning automobiles on the driveway. *Id.* The court did not examine whether the parties could install additional driveways. We affirmed the judgment finding an easement.

¶ 20 In *Gorman* one party argued that an easement was not necessary because the other could build a driveway. *Gorman*, 190 P.2d at 450. We said that requiring a driveway would require materially changing that portion of the residence adjoining the driveway and the landscaping on the front yard. The material changes were creating new steps for a porch and removing the older steps, closing up a clubroom door; making some changes in windows in the rear of the residence. *Id.* 190 P.2d at 449. The changes in the landscaping would have required cutting down some trees and cutting away a portion of the slope in the front yard. *Id.*

¶ 21 In our case today Jack argues that the present driveway is not necessary for Jerry, because Jerry could build a road ¼ mile in length on his property running from his house in a northerly direction to a public road that runs east to west on the north side of Jack's and Jerry's properties. Jerry argued that the land was "swampy ground," and that the expense in building the road on such ground would be inappropriate. The trial judge visited and viewed the property more than once. The trial judge determined that Jerry could build a road running to the north side of his property but "at significant great expense."

¶ 22 Jerry gave no testimony on the cost of building a road as suggested by Jack. No "expert opinion" was used by either side on the issue of the cost of building a road on Jerry's property. However, Jack testified that he spent $30,000 in placing concrete to convert the asphalt/gravel road for 3⁄16 of a mile to his house and the west side of the shop building. Jerry purchased the original forty acres from his brother for approximately $38,000.

¶ 23 The witnesses described the property of Jack and Jerry as being higher in elevation at their homes with the land sloping lower in elevation north of the homes. The aerial photograph of the properties shows a body of water on Jack's land that extends from the southwest corner of his property to the northeast corner of his property. The west side of the body of water has a dam. Various witnesses described the water as either a pond or a lake. In the photograph the water appears to cover several acres of Jack's property, and one witness estimated that it covered ten acres. Jack testified that the water did not overflow across the boundary of Jerry's property where Jack had proposed that Jerry build his driveway.

¶ 24 The trial court's ruling on the easement is based upon a perceived prohibitive cost to Jerry in building his own driveway. Jack argues on appeal that no evidence was introduced on the issue of the cost of Jerry building his own driveway. But the testimony does show the cost of building a concrete driveway on a prepared roadbed of asphalt and gravel for approximately the same distance as that minimally needed for Jerry to build a driveway. The evidence is sufficient to support the trial court's finding that Jerry could build a driveway but "at significant great expense."

¶ 25 We have explained that a deed may expressly grant or reserve an easement.

An easement may also be created by the intent of the parties: "But an easement may be implied also, and the intention of the parties is determined by all the facts and circumstances in order that effect may be given to the apparent intent." *Tangner v. Brannin*, 1963 OK 101, 381 P.2d 321, 322. We also said in *Tangner*:

An implied easement is based upon the theory that whenever one conveys property he includes in the conveyance whatever is necessary for its beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained....

In the case of *Jackson v. Noble*, 206 Okl. 411, 243 P.2d 735, an owner of adjoining lots had sold them to different grantees. **Part of the improvements serving one of the lots protruded on the other.** We reversed a judgment of the trial court that quieted title in the owner of the servient lot to the portion over which the disputed contention arose.

We there upheld the right of the owner of the dominant lot to use the implied easement on the ground that it was necessary to the reasonable enjoyment of the property. Our decision in that case was followed in the later case of *Boucherie v. Garrette*, Okl., 366 P.2d 763, the first syllabus thereof being:

'**Where the owner of two or more adjoining lots employs one so that the other derives a benefit of a continuous, permanent and obvious nature from the other, and sells the one in favor of which the quasi easement exists,** such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication.'

*Tangner v. Brannin*, 1963 OK 101, 381 P.2d 321, 322–323, emphasis added.

¶ 26 In our case today the evidence before the trial court was that the gravel driveway or road on the south boundary existed for several years prior to Jack's purchase of the property, and thus prior to Jerry purchasing his parcels from Jack. Jerry and his wife lived in a house on Jack's land and used the driveway while Jerry was building his new house. Jerry and Jack referred to the road as "our entrance and exit." The two 40–acre parcels derived a benefit from the road that was "of a continuous, permanent and obvious nature." One improvement to Jerry's 40 acres, the driveway, protruded on to Jack's 40 acres and Jack's 40 acres is burdened by that improvement. Jack sold the 40 acres to Jerry without previously closing the road, or reserving the roadway in his conveyance.

¶ 27 We agree that the trial court awarded an implied easement. The award of the easement is an exercise of the trial court's equitable cognizance, and its order will be affirmed on appeal unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity. *Story v. Hefner*, 540 P.2d at 566. We conclude that the order is not against the clear weight of the evidence, and that the order is not contrary to law or established principles of equity. We thus affirm the trial court's judgment that Jerry has an implied easement on the driveway.

¶ 28 In Jerry's appeal of the award of an easement he requests appellate relief in the nature of requiring the trial court to specify the easement using terms of legal description. Jerry does not point to any specific legal description that he offered for the trial court to use. The trial court used the description used by the parties to this dispute, that is, the driveway or road running on or near the south boundary of the quarter section beginning on the west boundary of Jack's property. Assuming for the purpose of argument that it is better practice for a court to define an easement by a legal description of the property involved, there is nothing of record upon which this Court could base such a description. This is a matter which, however, could be handled by the trial court upon remand there.

## II. The Shop Building

¶ 29 A shop building was built on Jack's property near Jerry's house, and the brothers had the habit for several years of eating dinner together every Monday night and then working together in the shop build-

ing. They also stored many of their own, and their mother's, possessions in the building. When the dispute occurred Jack sought to "quiet title" in the building, and asserted that Jerry was entitled to compensation for his share of the building. Jerry claims on certiorari that the trial court and the appellate court denied him due process when he was awarded only $12,500 for his interest in a shop building placed on Jack's property.

¶ 30 Jack and Jerry were two of the four owners of a company. Jack testified that he owned forty-three percent and Jerry owned 28 ½ per cent. The materials used to build the shop building came from this company with the consent of the four owners. Jerry testified that he installed the plumbing and some of electrical facilities in the building. Jerry testified that he was entitled to seventy per cent of the building. Jack testified that he paid the insurance premiums on the building, and that Jerry had not contributed for the premiums. Jack also stated that he "pays the taxes on it." Jack did not specify the amount of money he had paid in either premiums or taxes on the building.

¶ 31 Jerry testified that the value of the shop building for tax purposes is approximately $43,000. He did not specify whether this included the real property the building was on, or if it included the fire damage. Jerry did not explain any relationship between net value of an asset and its value for tax purposes. Jerry also testified that to move the steel structure and erect it in its present condition would cost $25,000.

¶ 32 Jack stated that he was familiar, and had experience in the past, with the cost of steel and "erection cost" of a building. Jack then stated that he could "guess" on the value for an erected building "like" the one at issue with similar concrete slab, plumbing, and electrical facilities. Jack's estimated value was $80,000 to $90,000. However, Jack also said that Jerry was more qualified to give an estimate on the value of the building.

¶ 33 Jack testified that Jerry was entitled to fifty per cent of the value of the building. Jack also testified that he and Jerry spent $25,000 "out of pocket" together to build the

shop building. No "expert opinion" was used by either side to determine the value of the building.

¶ 34 The shop building had been damaged by a fire. Jerry testified that he had repaired some of the damage prior to the trial. He did not specify an amount of money that he had spent in making the repairs. Neither Jack or Jerry specified whether any insurance proceeds were available to repair the damage.

¶ 35 The court found that the building was on Jack's property, and that economic waste would result if the building was removed. The trial court concluded that Jack and Jerry should each receive one-half of the value of the building. The building was awarded to Jack. However, the trial court determined that the building's cost was $25,000 and the building's worth at $80,000, and then awarded Jerry a judgment of $12,500.

¶ 36 When partners own property in equal shares we have looked at the net value of the partnership property in awarding respective shares. *Freeling v. Wood,* 1961 OK 113, 361 P.2d 1061, 1061–1062.[4] The parties discussed who paid the taxes on the building and who contributed certain funds and labor, but no dollar amounts were stated by them except what they had jointly, and not separately contributed. Thus, it appears that in this circumstance the parties were attempting to determine the net value of partnership property by the fair, cash, or market value of the asset. *See, e.g., Freeling,* 361 P.2d at 1063. We have reviewed a trial court's finding of the value of a partnership asset based upon whether any evidence existed in the record reasonably tending to support the finding. *Cromwell v. Hamilton,* 1923 OK 141, 214 P. 694, 694–695.

¶ 37 A value of $25,000 and the resulting award of $12,500 based upon 50% of that value is not supported by the record. The record shows a value of the building in excess of $25,000. Both Jerry's tax value of $43,000 and Jack's guess of $80,000–$90,000 exceed

---

4. The concept of net value of partnership property includes whether any liabilities are properly chargeable to the property. *Pope v. Vernon,* 1963 OK 13, 383 P.2d 9, 13.

the $25,000 amount used to determine Jerry's one-half share.

¶ 38 The out-of-pocket costs of $25,000 is insufficient, by itself, to determine value, since much of the material used to construct the building came from the brothers' company. The $25,000 amount does not include the cost of these materials, and the cost was incurred some years previous to the partnership dissolution. The amount of $25,000 to remove the building and construct it at another location does not determine the net value of the building. The trial court's evaluation of the building in that sum was clearly contrary to the clear weight of the evidence.

¶ 39 Jerry asks us to adopt Jack's value of $80,000, but disregard Jack's statement that Jerry would be better at placing value, and disregard as well Jerry's value of $43,000. The trial court may determine the credibility of the witnesses before it. *Kerr v. Clary*, 2001 OK 90, ¶ 18, 37 P.3d 841, 845. We decline to determine on appeal the credibility of either brother. We decline to adopt either brother's estimate, as both fall short of identifying the value of the property. We reverse the judgment in the amount of $12,500, and direct the trial court to determine, upon further proceedings, the net value of the building, and award the appropriate judgment to Jerry.

## III. The Dog Pen

¶ 40 A dog pen was installed in 1983. Jerry and Sue used the pen for their dogs. Jack did not use the pen. Jerry took photographs of Jack and a friend dismantling a dog pen in 1999. Jerry testified that he could not remember the cost of the original dog pen. However, he stated that it would cost him about six thousand dollars to replace it. He stated that the value of the pen had not depreciated during its sixteen years of use.

¶ 41 Jerry called as a witness Mr. Guess who built a dog pen on Jack or Jerry's property. He testified that the fair market value of this pen was "in the neighborhood of thirty-six hundred dollars." He testified that the pen he built was four or five years old.

¶ 42 Jack testified that the dog pen that was removed had been in place for seventeen to eighteen years. He testified that the dog pen Guess described was not the dog pen that he removed. Jack said that he removed Jerry's dog pen from his property in February of 1999, and that "I put all the material on Jerry's property." Jack testified that he gave Jerry part of the materials to build the dog pen.

¶ 43 The trial court directed the parties to file closing arguments combined with proposed findings of fact and conclusions of law. Jerry's final argument combined with proposed findings of fact and conclusions of law argued that he should receive $3,600 for the destroyed dog pen. Jack's final argument said that Guess testified about a different dog pen recently built, and not the dog pen Jack dismantled. Jack argued that Jerry did not put on any evidence of the value of this much older dog pen.

¶ 44 The trial court stated that no evidence was provided on the fair market value of the dog pen, and denied Jerry's claim. In sum, the trial court believed Jack's testimony that he dismantled a different dog pen from the one described by Guess. Jack stated that he stacked the materials from this dog pen on Jerry's land, and no value on these materials was made by Jack.

¶ 45 When a plaintiff pursues relief in both equity and in law, and neither is paramount to, or provides a foundation to the other, a court submits the cause of action in law to a jury, unless waived. *Mashunkashey v. Mashunkashey*, 1941 OK 113, 113 P.2d 190, 192. Where the equitable issues are paramount, or the legal issues incidental to or dependent upon the equitable issues, then the issues are treated as equitable for purposes of the trial, and the findings of fact relating to both the equity and legal issues are reviewed on appeal using the "clear weight of the evidence" equity standard. *See, e.g.*, *Waggoner v. Johnston*, 1965 OK 192, 408 P.2d 761, 768, (where equitable nature of interpleader was paramount to claim for recovery of money the trial court's findings of fact were reviewed by the clear weight of the evidence standard).

¶ 46 The petition of Jerry against Jack did not allege that the dog pen was partnership property to be divided. Jerry did not seek any equitable relief based upon what Jack allegedly did to the dog pen. Jerry sought a "money judgment" in the amount of $6,000 for Jack's alleged willful destruction of Jerry's property. Further, Jerry did not base his right to this money judgment upon the trial court granting, or not granting, any relief in his equity-based claims.

¶ 47 In *Silk v. Phillips Petroleum Co.,* 1988 OK 93, 760 P.2d 174, we reviewed a judgment for damages, and our standard of review was whether there was any competent evidence or reasonable inference from circumstances reasonably tending to establish a cause of action or to sustain the jury's verdict and judgment based thereon. *Silk,* 760 P.2d at 176. In the same proceeding we then reviewed an equitable claim for rescission, and stated that this Court is not bound by the reasoning of the trial court or by its findings, but will examine the whole record, consider and weigh the evidence. *Silk,* at 760 P.2d at 180. We thus used a legal standard of review for a legal claim and an equity standard of review for the equity-based claim in the same proceeding. We also note that when determining whether the equity issue is paramount one of the factors we examine is whether the alleged right to damages is dependent upon the establishment of the equitable right alleged. *See, e.g., Russell v. Freeman,* 1949 OK 256, 214 P.2d 443, 444. The claim for damages to the dog pen in our case today is unrelated to the equity-based claims, and we thus review the evidence on this claim as in an action at law.

¶ 48 We have said that in an action at law, the findings of fact by the trial court have the same force and effect as the verdict of a jury, and those findings will not be disturbed upon appeal where there is any evidence reasonably tending to support the findings. *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, 818 P.2d 475, 480; *Shick v. Enid Clinic,* 1939 OK 101, 88 P.2d 329, 330. Whether one dog pen or two dog pens existed, and if more than one, which one Jack dismantled, are questions of fact. The trier of fact in the trial court determines the credibility of witnesses and the effect and weight to be given to conflicting or inconsistent testimony. *Kerr v. Clary,* 2001 OK 90, ¶ 18, 37 P.3d 841, 845. Evidence exists in the record to support the trial court's denial of Jerry's claim, and we thus affirm the trial court's denial of Jerry's claim for damages resulting from the dismantled or destroyed dog pen.

## IV. Denial of the Motion For New Trial

¶ 49 Jerry challenges the trial court's denial of his motion for new trial. Appellate review of his motion for new trial involves the same arguments relating to the value of the shop building and denial of his claim based upon removal of the dog pen.

¶ 50 In reviewing a trial court's decision denying a motion for new trial, we use an abuse of discretion standard of review, and will reverse the order if the trial court is deemed to have erred with respect to a pure, simple and unmixed question of law. *Jones, Givens, Gotcher & Bogan, P.C. v. Berger,* 2002 OK 31, ¶ 5, 46 P.3d 698, 701. We have explained herein that the evidence is insufficient to support an award of $12,500 to Jerry for his share of the building. Thus, the trial court's denial of the motion for new trial on this ground was in error. We have also explained that the trial court record supports its denial of Jerry's claim for damages from the removal of the dog pen, and the denial of the motion for new trial on this ground was not an abuse of discretion.

## Summary

¶ 51 In summary, the judgment of the trial court awarding an easement is affirmed. The award of a judgment for $12,500 is reversed with directions for further proceedings upon remand. The trial court's denial of the claim for damages from the removal or destruction of a dog pen is affirmed. The opinion of the Court of Civil Appeals herein is vacated, the judgment of the District Court is affirmed in part and reversed in part, and the matter remanded to the trial court for further action.

¶ 52 WATT, C.J., OPALA, V.C.J., and HODGES, LAVENDER, HARGRAVE, BOUDREAU and WINCHESTER, JJ., Concur.

¶ 53 KAUGER, J., Concurring in part, dissenting in part.

The opinion uses equitable standards, but fails to do equity.

## APPENDIX A