OSCN Found Document:MILLS et al. v. FUHRMANN et al.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MILLS et al. v. FUHRMANN et al.
2025 OK CIV APP 23
Case Number: 122014
Decided: 04/11/2025
Mandate Issued: 07/10/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2025 OK CIV APP 23, __ P.3d __

 

LANA MILLS and WILLIAM MILLS, Plaintiffs/Appellees
vs.
JEROME FUHRMANN, and spouse of JEROME FUHRMANN, if any, SANDRA FUHRMANN, individually, and SANDRA FUHRMANN, as Personal Representative of the Estate of Leon Fuhrmann, and TRINITY SPRINGS RANCH, LLC, Defendants/Appellants

APPEAL FROM THE DISTRICT COURT OF
LOVE COUNTY, OKLAHOMA

HONORABLE TODD HICKS, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART

Justin R. Landgraf, Natalie Swink-Smith, REPUBLIC LAW GROUP, Ardmore, Oklahoma, For Plaintiffs/Appellees,

Mitchell D. Blackburn, CONNER & WINTERS, LLP, Oklahoma City, Oklahoma,
and
Stephen D. Colbert, COLBERT LAW GROUP, PLLC, Flower Mound, Texas, For Defendant/Appellant, Trinity Springs Ranch, LLC.

THOMAS E. PRINCE, JUDGE

¶1 Trinity Springs Ranch, LLC (Defendant/Appellant), has appealed the trial court's Journal Entry entered on January 31, 2024, which found that Lana and William Mills (Plaintiffs/Appellees) were entitled to an easement for ingress and egress along an unpaved roadway traversing Trinity Springs' real property in Love County, Oklahoma. Trinity Springs argues the trial court erred in finding the Mills were entitled to an easement under any legal theory, while also contending the trial court erroneously enjoined any obstruction of the easement "in perpetuity." The Mills also filed a counterappeal, arguing the trial court erred by limiting their right to improve or alter the easement. We find the trial court correctly concluded the Mills were entitled to an easement by necessity and implication but find the trial court erred in its conclusion that the Mills had acquired an easement by prescription. As easements by necessity and implication cannot exist "in perpetuity", we find that the trial court erred in permanently enjoining Trinity Springs from obstructing the easement. Concerning the counterappeal, we find no error in the trial court's constraint of the Mills' future development or expansion of the easement. Accordingly, the trial court's Order is affirmed in part and reversed in part.

BACKGROUND

¶2 This appeal

¶3 Relevant details pertaining to the history, topographical features, chain of title, and use of the Fuhrmann and Mills properties emerged through the Parties' pleadings, exhibits, and witness testimony, ultimately weaving the following timeline. Ms. Mills claimed the Mills Property was acquired by her ancestors in 1905, but noted her father, Mr. Burkhart, had purchased an additional 20 acres of real property in 1967 from his eastward neighbor (and owner of the Fuhrmann Property at the time), Joe Whittington. In 1969, Mr. Whittington would go on to sell the rest of his property to the Fuhrmanns. According to Mr. Burkhart's deposition from a separate legal action dating back to 1997, Mr. Burkhart attested to "freely crossing" what is now known as the Fuhrmann Property since 1929, thus predating the Fuhrmann's acquisition of the property. Historical photographs confirmed the presence of an unpaved roadway (now known as Whittington Road) on the Fuhrmann Property since 1956. Following the Fuhrmann's purchase from Mr. Whittington, the Fuhrmanns and Mr. Burkhart utilized a dual-lock system at the gate connecting to Whittington Road which provided both neighbors unencumbered access to the roadway. While details from the 1997 action indicated Mr. Burkhart sought an easement crossing his northern neighbor's property, no party in the present action could attest to personally witnessing Mr. Burkhart or his predecessors in interest actually use any northern access point into the Mills Property. Witness testimony would, additionally, reveal that access to the Mills Property was impossible to the north due to flooding and difficult terrain. The Red River runs along the entire western side of the Mills Property, rendering entry from the west equally unviable.

¶4 On January 2, 2020, Trinity Springs Ranch, LLC filed a Motion to Intervene, stating it had purchased the Fuhrmann Property from Jerome and Sandra Fuhrmann on November 2, 2019, making Trinity Springs the real party in interest as the newfound owner of the servient estate burdened by the Mills' alleged easement. On February 24, 2020, the trial court entered a minute order both granting Trinity Springs' Motion to Intervene and temporarily enjoining Trinity Springs from obstructing Whittington Road "pending final trial." Trinity Springs, thereafter, filed two Motions for Summary Judgment (No Evidence Motion and a Traditional Motion) on September 4, 2020. The trial court denied both of Trinity Springs' Motions on October 28, 2020.

¶5 The case proceeded to trial on April 14, 2021, during which the Mills called four witnesses to testify: James Blevins, Michael Fuhrmann, Lana Mills, and Shane McCage. The Mills called James Blevins, a licensed abstractor and attorney, as an expert witness to present expert testimony regarding title issues and, in particular, whether there was unity between the Parties' two properties. Mr. Blevins explained that he had been provided a Title Report prepared by Buffalo Land and Title Company and had examined documents dating back to patent or unallotted land deeds from the Choctaw and Chickasaw Nations to determine whether there was any common ownership of the two neighboring properties. Based upon his examination, Mr. Blevins concluded portions of the Mills and Fuhrmann Properties were originally part of a singular allotment owned by Watson Palmer, a member of the Choctaw Tribe, before the Properties were conveyed to the Mills' and Fuhrmann's respective predecessors in interest, thus establishing unity of title. Mr. Blevins specifically testified that "[t]here are three unified -- or three tracts where the title is unified or basically had the same common owner."

¶6 The Mills next called Michael Fuhrmann to testify as a former owner of the Fuhrmann Property. Mr. Fuhrmann recalled his interactions with Mr. Burkhart, noting that Mr. Burkhart had been crossing the Fuhrmann Property to access the Mills property since the Fuhrmanns first acquired the Property in 1969, but did not recall if Mr. Whittington had informed the Fuhrmanns whether he had given Mr. Burkhart permission to use Whittington Road prior to the Fuhrmanns' purchase. Mr. Fuhrmann testified that he had personally directed Mr. Burkhart to refrain from using other access points on the Fuhrmann Property other than Whittington Road, as Mr. Burkhart had been reportedly crossing the Fuhrmann Property along an additional route. When asked whether Mr. Burkhart or his predecessors had any other feasible means of entry into their property other than through the Fuhrmann Property, Mr. Fuhrmann explained that entry through the Mills' northern neighbor's property would be "impossible" due to the conditions, as it would be too difficult to construct a consistently traversable road. Mr. Fuhrmann did not know how long Mr. Burkhart and his predecessors had been using Whittington Road but noted on cross-examination that he believed he was allowing Mr. Burkhart to use Whittington Road to be a "good neighbor." When asked whether Mr. Fuhrmann believed he gave Mr. Burkhart permission to cross, Mr. Fuhrmann stated the following:

A. Well, there wasn't -- I don't know if we gave them permission. But they was going through there and we didn't -- we didn't stop them. Because they -- because since Joe Whittington told me they was always going through there and there was no problem he said.

Q. Okay. You didn't view them as trespassing, did you?

A. No. No.

Q. If you had thought they were trespassing would you have stopped them?

A. Probably.

Q. If you had thought they were trying to take this land and have the Court enter an easement across your land for their benefit, would you have stopped them?

A. Probably.

Mr. Fuhrmann concluded his testimony by reiterating that he stopped Mr. Burkhart from crossing the Fuhrmann's property via two, separate pathways, but noted that he "felt like he had to let [Mr. Burkhart] get to [his] property", which is why he continued to allow Mr. Burkhart to utilize Whittington Road.

¶7 Lana Mills similarly testified to her family's historical use of Whittington Road to access the Mills Property, indicating that her great-grandparents purchased the Mills Property in 1905, after which it was passed to her grandfather, then to her father (Mr. Burkhart) and uncle, before she inherited the Property in 2006. Ms. Mills recalled regular use of and access to the Property via Whittington Road throughout her lifetime, noting that the neighbors had utilized a dual-lock system for over half-a-century until the summer of 2017, ensuring the Mills and their predecessors had free and open access to the roadway. Ms. Mills testified that Jerome Fuhrmann, through his representative, Steve Sneed, removed the dual-lock system in June of 2017, thereby obstructing the Mills' access to Whittington Road and, consequently, preventing entry into the Mills Property. When asked whether either she or father had used any other route to access the Mills Property, Ms. Mills firmly asserted they had "never used any road but the one in question." Ms. Mills explained that a consistently accessible route through the northern portion of the Mills Property could not be feasibly maintained due to heavy flooding by the Red River and developing swampland which is untraversable. Ms. Mills also confirmed that the road depicted in a 1956 aerial photograph was the same road she and her family had used for decades, and that this roadway (now known as Whittington Road) is the only reasonable entry point to the Mills Property.

¶8 The Mills also called Shane McCage, Ms. Mills' nephew-in-law, to testify about his use of the Mills Property following his marriage to Ms. Mills' niece. Mr. McCage described using the property with his family for recreational purposes and noted he had no issues accessing the property until Mr. Sneed removed the dual-lock system and informed Mr. McCage that the Mills family could no longer use the gate accessing Whittington Road. Mr. McCage attested that Whittington Road provided the only feasible point of entry into the Mills Property, as many of the alternative routes proposed were in the floodplain. Mr. McCage also stated that he is not aware of anyone ever using any access point into the Mills Property other than Whittington Road.

¶9 Trinity Springs called two witnesses: Bryan Adams and Ronnie Whittington. Bryan Adams testified as the managing member of Trinity Springs, first describing his initial purchase of the Fuhrmann Property in 2019. Mr. Adams explained that, in his view, the potential of an easement to the north of the Mills Property would render any alleged easement on the Fuhrmann Property unnecessary. Mr. Adams, however, attested to never personally using or visiting the purported roadway to the north, knowing of its existence only via hearsay. Following the purchase of the Fuhrmann Property, Mr. Adams maintained he never prevented the Mills or their invitees from accessing Whittington Road. Mr. Adams, however, raised his concerns regarding the Mills' unbridled use of the road, expressing a fear for fires started by ATVs which might impact his hay production, in addition to concern over liability issues if the Mills or their invitees drive off the roadway. Mr. Adams attested that any commercial use of Whittington Road, including driving sand or gravel trucks across the road, would constitute unreasonable use and would damage the property.

¶10 Trinity Springs also called Ronnie Whittington to testify about his personal familiarity with the Fuhrmann Property and his more recent role as the grounds manager from Trinity Springs: i.e., he testified that he handles general maintenance of the property, including mowing the pastures, planting wheat in the winter, takes care of Mr. Adams' homes, and make sure the property is safe. Mr. Whittington is the nephew of Joe Whittington -- the previous owner of the Fuhrmann Property and the namesake of "Whittington Road". He clarified that he had not personally lived on the Fuhrmann Property during his uncle's period of ownership. Instead, Mr. Whittington maintained he was familiar with the Fuhrmann Property, both because he lived his entire life in close proximity to the Property and had worked on the Property as a child. The transcript shows a long series of objections and discussion with the trial court when Ronnie Whittington was asked how his uncle, Joe Whittington, viewed the fact that "Sam Burkharts [sic] crossing his land to reach Mr. Burkharts' land. The trial court ultimately allowed him to testify as what he "believe[d] to be the reputation" for the Fuhrmann Property "as it comes to allowing neighbors to cross with or without permission". Ronnie Whittington then stated that he did not believe his uncle would have allowed anyone to cross without permission. Mr. Whittington also testified to his belief that the Mills had two additional access points into their property beyond Whittington Road, but on cross-examination admitted that he had no personal knowledge whether the Mills or their predecessors in interest actually used any route other than Whittington Road to access the Mills Property. Mr. Whittington made clear in his testimony that the Mills could only access their property by crossing their neighbor's private property to the north or crossing the Fuhrmann Property to the east, making the Mills Property effectively landlocked.

¶11 On September 7, 2021, the trial court entered a Notice of Decision, finding the Mills had demonstrated they were entitled to the Whittington Road easement under all three of the proffered legal theories (i.e. necessity, implication, and prescription). The trial court determined the Mills were entitled to an easement by necessity because there was "no reasonable access" to the Mills Property "but for the roadway in dispute." With regard to an easement by implication, the trial court found that the Mills met their burden of proof "as the disputed roadway was in use for the benefit of the conveyed tract at the time of the conveyance." Finally, the trial court found the Mills had acquired an easement by prescription by demonstrating open, continuous, exclusive, and hostile possession of Whittington Road for the statutory period of fifteen (15) years. The trial court directed the Mills and Trinity Springs to maintain the dual-lock system used by their predecessors, further holding that the Mills may "maintain the roadway in its existing state and current location." The trial court clarified, however, that the Mills could not utilize Whittington Road for commercial use or otherwise improve/alter the roadway. The trial court additionally denied the Mills' alternative request to open a section line roadway, but granted the Mills' request to permanently enjoin the record owners of the Fuhrmann Property (now Trinity Springs) from obstructing the Mills' use of the easement.

¶12 The Mills, thereafter, filed a Motion to Settle Journal Entry on November 2, 2022, requesting the trial court address the parties' competing legal descriptions of the easement and clarify "the acceptable practice of maintenance of the easement such as grading, mowing, adding material, or other activities." The trial court conducted a hearing on the Mills' Motion on November 28, 2022, during which the Mills and Trinity Springs each presented a proposed pathway for the Whittington Road easement. The Mills called Jared Wiley, a licensed professional land surveyor, who attested to visiting Whittington Road with the Mills, Trinity Springs, and their respective counsel to measure the centerline of the existing road to determine a precise path for the easement. Based upon his survey and a review of historical photographs, Mr. Wiley recommended the trial court adopt the path proposed by the Mills. Ms. Mills and Mr. Adams also testified, each advocating for their proposed pathways for the easement. Ms. Mills noted the regular flooding causes certain areas of the existing route to fill with water, impeding navigability. Mr. Adams endorsed his pathway, maintaining it followed "the natural line" and "keeps people from driving out in the hayfield."

¶13 The trial court, ultimately, adopted Trinity Springs' proposed path and corresponding legal description and further limited the roadway's width to 20 feet. The Mills were granted right to gravel all or portion of the agreed upon roadway at their expense. The trial court indicated that Trinity Springs was allowed to continue to secure their property so long as the Mills and their invitees still have unrestricted access, but noted that the Mills would not be required to notify Trinity Springs of their entry and exit. On January 31, 2024, the trial court entered its Journal Entry memorializing its finding that the Mills were entitled to an easement by necessity, implication and prescription, in addition to permanently enjoining Trinity Springs "from obstructing, limiting, or otherwise interfering with the owners of the Mills Property and their invitees' access to the easement . . . in perpetuity." The Journal Entry also included the stipulated legal description of the Whittington Road easement attached as an Exhibit. Trinity Springs, thereafter, initiated this timely appeal.

STANDARD OF REVIEW

¶14 A trial court's award of an easement is a matter of equitable cognizance which we will affirm on appeal "unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity." Mooney v. Mooney, 2003 OK 5170 P.3d 872Story v. Hefner, 1975 OK 115540 P.2d 562 de novo. Kluver v. Weatherford Hosp. Auth., 1993 OK 85859 P.2d 1081De novo review provides this Court with plenary, independent, and non-deferential authority to reexamine the trial court's rulings on issues of law. Bd. Of Cnty. Commissioners of Texas Cnty. v. State ex rel. Office of Juvenile Affairs, 2021 OK CIV APP 40

ANALYSIS

¶15 Trinity Springs cited five (5) issues on appeal Upon reviewing each of the parties' allegations of error, we derived three (3) overarching issues necessitating our resolution: (1) whether the trial court erred in finding that the Mills were entitled to an easement by necessity, implication, and prescription; (2) whether the trial court erroneously granted an injunction barring obstruction of the easement "in perpetuity"; and (3) whether the trial court erred in limiting the Mills' use and development of the easement. We find the trial court correctly concluded that the Mills were entitled to an ingress/egress easement by necessity and implication. We, however, conclude that the trial court erred in its finding that the Mills' interest in the roadway was an easement by prescription, as evidence in the record revealed only permissive use of Whittington Road by the Mills and their predecessors. As easements by implication and necessity cannot exist "in perpetuity," the trial court erred in permanently enjoining Trinity Springs and its predecessors from obstructing the Mills' use of the roadway. Finally, we find the trial court's limitation of the Mills' improvement or alteration of the roadway to be proper and consistent with case law describing the "reasonable use" of easements.

A. Existence of an Ingress/Egress Easement

¶16 "An easement creates a legal relationship between two parties. The easement holder is referred to as the dominant estate; and the owner of land subject to an easement is known as the servient estate. (citation omitted). An easement affords its titleholder a limited non-possessory right to use a parcel of land for a specific purpose. (citation omitted)." Logan Cnty. Conservation Dist. v. Pleasant Oaks Homeowners Ass'n, 2016 OK 65374 P.3d 755Mooney v. Mooney, 2003 OK 5170 P.3d 872Id. (citing Burkhart v. Jacob, 1999 OK 11976 P.2d 1046Barrett v. Humphrey, 2012 OK CIV APP 28275 P.3d 959(citing Kirby--Smith Machinery, Inc. v. City of Oklahoma City, 2001 OK CIV APP 2519 P.3d 331Logan Cnty. Conservation Dist., 2016 OK at ¶ 14, 374 P.3d at 761--62 (citation omitted).

¶17 While easements by necessityactual use of one part of the property for the benefit of the other" and "presupposes the existence of an obvious servitude on the land which a purchaser could not have taken without notice thereof." Johnson v. Suttles, 2009 OK CIV APP 89227 P.3d 664as corrected (Oct. 30, 2009). In contrast, an easement by necessity does not require "actual use" of the easement, but merely requires a claimant demonstrate "that his land, or a portion thereof, was inaccessible and in need of an easement at the time of the severance of the two tracts. Johnson v. Suttles, 2009 OK CIV APP at ¶ 15, 227 P.3d at 668 (citing Blackwell v. Mayes County Util. Servs. Auth., 1977 OK 190571 P.2d 435at some time in the past by the same person", but the tracts of land need not be owned by the same person at the time of the conveyance. DeWitt v. Cavender, 1994 OK CIV APP 93878 P.2d 1077

¶18 Trinity Springs has alleged the Mills did not satisfy their burden of demonstrating unity of title between the Mills Property and the Fuhrmann Property, thus the trial court erred in finding easements by necessity and implication. While we are unconvinced by the Mills' contention that Mr. Burkhart's 1967 purchase of a small tract of land from Mr. Whittington created a unity of title between the neighboring properties, we find that Mr. Blevins' testimony sufficiently established unity of title by tracing ownership to a common grantor. Mr. Blevins testified that portions of the Fuhrmann and Mills present day property were once unified under an allotment owned by Watson Palmer, a member of the Choctaw Tribe, before the unified property was severed and portions were eventually subsumed into the Mills and Fuhrmann Properties. In its September 7, 2021, "Notice of Decision", the trial court found that there was "unity of title of the conveyed property." That finding was not against the clear weight of the evidence or is contrary to law.

¶19 Upon establishing unity of title, the Mills sufficiently demonstrated they were entitled to an easement by implication. Prior to the Fuhrmanns' purchase of the Fuhrmann Property from Mr. Whittington, the record confirmed that Mr. Burkhart and his invitees had made "apparent and continuous" use of Whittington Road to access the Mills Property, which they continued to do upon the Fuhrmanns' acquisition of the Property. Witness testimony similarly confirmed the Mills' sole reliance upon Whittington Road to access the Mills Property, as Ms. Mills, Mr. McCage, and Mr. Fuhrmann all confirmed access from the north of the Mills Property is impossible due to flooding and difficult terrain. Even Mr. Whittington admitted that the Mills Property was landlocked, as the Mills only feasible means of entry would require crossing a neighbor's private property. As the element of "necessity" is required for both an easement by necessity and implication, the Mills also satisfied their burden of proof for an easement by necessity. Accordingly, the trial court correctly found the Mills were entitled to the Whittington Road easement by necessity and implication.

¶20 The trial court erred, however, in finding the Mills had acquired an easement by prescription, as the record did not reveal hostile use of Whittington Road by the Mills and their predecessors. See Hurst v. Stowers, 1965 OK 30399 P.2d 477see also Zimmerman v. Newport, 1966 OK 42416 P.2d 622See e.g., Friend v. Holcombe, 1945 OK 267196 Okla. 111162 P.2d 1008citing Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646

¶21 We additionally find the trial court erred in enjoining Trinity Springs "in perpetuity" from "obstructing, limiting, or otherwise interfering with the owners of the Mills Property and their invitees' access to the easement", as easements by necessity and implication cannot exist in perpetuity as a matter of law. An easement by necessity "only continues while the necessity exists" and is extinguished after the easement "ceases to be indispensable to access the land". Catterall v. Pulis, 1929 OK 63137 Okla. 86278 P. 292See Johnson v. Suttles, 2009 OK CIV APP 89227 P.3d 664citing 28A C.J.S. Easements § 96) ("[o]nce granted, an easement of necessity continues as long as the need exists."); See also Griffin v. Dwyer, 1937 OK 493181 Okla. 7172 P.2d 349

¶22 In contrast, an easement by implication is regarded as "a true easement having permanence of duration" which Oklahoma courts have distinguished from an easement purely via necessity. Nevertheless, easements by implication, just like all other easements, are subject to termination by abandonment, extinguishment, merger, or condemnation of the servient estate. Kansas, O. & G. Ry. Co. v. Rogers, 1947 OK 235200 Okla. 111191 P.2d 209 Coline Oil Co. v. Cannon, 1930 OK 39144 Okla. 133289 P. 763citing Boykin v. Ancrum, 28 S. C. 486, 6 S. E. 305, 308, 13 Am. St. Rep. 698) (the doctrine of merger of estates is defined as "the annihilation of one estate in another. It takes place usually when a greater estate and a less coincide and meet in one and the same person without any intermediate estate, whereby the less is immediately merged--that is, sunk or drowned--in the greater."); United States v. Welch, 217 U.S. 333, 339, 30 S. Ct. 527, 527, 54 L. Ed. 787 (1910) (condemnation of a servient estate extinguishes any existing easements). Accordingly, as easements by implication and necessity cannot exist "in perpetuity" as a matter of law, the trial court's permanent injunction is vacated.

B. Limitation on Easement's Use and Further Improvement/Alteration.

¶23 We find no error in the trial court's constraint of the Mills' use of Whittington Road. In Barrett v. Humphrey, 2012 OK CIV APP 28275 P.3d 959

The grantee of the free and uninterrupted use of a private road may improve it in such manner as to make it fit for the purpose expressed in the grant, and in so doing may construct a bridge over a ravine or creek, if it be done in such way as to cause the least practicable damage to the owner of the servient tenement; however, ample room must be left for the natural flow of the water, even in time of flood, except it be so great as to be beyond ordinary human experience, when it is regarded as an act of God, for which man cannot be held responsible.

Barrett v. Humphrey, 2012 OK CIV APP 28275 P.3d 959citing Hammond v. Hammond, 258 Pa. 51, 101 A. 855, 857 (1917)). Accordingly, the Mills' right to further develop and/or use Whittington Road must be balanced against Trinity Springs' property rights and use of the servient estate. See e.g., Barrett v. Humphrey, 2012 OK CIV APP 28275 P.3d 959Burkhart v. Jacob, 1999 OK 11976 P.2d 1046Burkhart v. Jacob, 1999 OK 11976 P.2d 1046Burkhart Court articulated several factors in evaluating the reasonableness of a proposed use, including, but not limited to: (1) the purpose of the easement; (2) the new use compared to the past use; taking into account the purpose of the land and the language granting the easement; (3) the physical character of the easement; (4) the burden on the servient land; and (5) any other relevant factors. Id. A "burden" on the servient estate includes, among other things, decreased property value, increased noise and traffic or interference with the servient owner's peace and enjoyment of the land, and physical damage to the servient estate. Id.

¶24 In applying the Burkhart factors, we find the trial court properly limited the Mills' use of Whittington Road, as any further development or expansion of the road to accommodate commercial activity would not constitute "reasonable use" of the easement. The Mills' predecessors used Whittington Road purely as an access point to their property which they utilized for farming and recreation for over a century -- at no prior point have the Mills utilized Whittington Road for commercial activities. As Whittington Road is an unpaved roadway intersecting the Fuhrmann Property, increased traffic or an expanded roadway would certainly burden the servient estate. Both Mr. Adams and Mr. Whittington testified that use of Whittington Road for commercial activities, particularly sand and gravel operations, would severely diminish the Fuhrmann Property's value, in addition to affecting Trinity Springs' enjoyment and general use of the property. Accordingly, the trial court's reasonable constraint of the Mills' usage and future development of Whittington Road is affirmed.

CONCLUSION

¶25 Based upon the foregoing analysis, we find that the trial court correctly determined the Mills were entitled to an easement by necessity and implication, but erred by finding the Mills acquired the Whittington Road easement by prescription. The trial court additionally erred in permanently enjoining Trinity Springs from obstructing the Whittington Road easement, as neither easements by implication nor necessity can exist "in perpetuity." Finally, for purposes of the counterappeal, we find that the trial court correctly constrained the Mills' use of Whittington Road. The trial court's Order is, therefore, affirmed in part and reversed in part.

GOREE, P.J., and SWINTON, J., concur.

FOOTNOTES

The Mills initiated the subsequent action (CJ-2018-13) on March 29, 2018, seeking to enjoin the Fuhrmanns from obstructing the road the Mills had used to access their property, which the Mills maintained was an easement. The Mills moved to consolidate the two cases on November 9, 2018, and the trial court, ultimately, ordered all the claims be consolidated into CV-2016-13.

1. Whether the District Court erred in granting Appellees an easement by necessity despite the fact that the evidence showed that Appellees had reasonable access to their property by way of an easement granted on the north side of Mills' property acquired after an appeal to the Oklahoma Supreme Court in Burkhart v. Jacob, 1999 OK 11976 P.2d 1046inwhich

2. Whether the District Court erred in granting Appellees an easement by implication when there was no unity of title to support such an easement. The parties and their predecessors in title had owned the properties that were the subject of the easement since separate patents from the Choctaw and Chickasaw Nation to the parties' predecessors in title for over one hundred years.

3. Whether the District Court erred in granting Appellees an easement by prescription when Appellees failed to prove ingress and egress over a specified route and all the evidence demonstrated that Appellees' use of the trail was permissive and not open and hostile.

4. Whether, considering the error of the District Court in granting Appellees easements by necessity, implication, and prescription, the District Court also erred in granting Appellees a permanent injunction prohibiting Appellant from "obstructing, limiting, or otherwise interfering with the owners of the Mills Property and their invitees' access to the Easement in perpetuity."

5. Whether the District Court erred in granting Appellees an injunction "in perpetuity" considering the error of the District Court in granting Appellees an easement by prescription, and the fact that easements by implication and necessity do not continue "in perpetuity."

1. Whether the District Court erred in not opening the section line for use of a roadway.

2. Whether the District Court erred in limiting the use of the easement.

Whether the District Court erred in limiting improvement to the easement.

Jones v Weiss, 1977 OK 188570 P.2d 948Johnson v. Suttles, 2009 OK CIV APP 89227 P.3d 664citing 28A C.J.S. Easements § 93 (1996).

Story v. Hefner, 1975 OK 115540 P.2d 562Id. Use of the easement must be "apparent and continuous" and "reasonably necessary to the enjoyment of the quasi-dominant tract." Id. When determining whether a conveyance created an easement, courts "must also consider whether reciprocal benefits result and the manner in which the land was used prior to the conveyance as well as the extent of the necessity for the enjoyment of the land." Id. at ¶ 17. The element of "necessity" in the creation of an easement by implication does not demand "absolute necessity" and, instead, "a reasonable necessity is sufficient."

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105